Elizabeth FLOOD, Petitioner

v.

MERCANTILE ADJUSTMENT BUREAU, LLC, Respondent.

No. 06SC699.

Supreme Court of Colorado, En Banc.

Jan. 22, 2008.

Rehearing Denied Feb. 19, 2008.*

* Justice Rice, Justice Coats and Justice Eid would have Granted the Petition.

Gary Merenstein, Boulder, Colorado, Pendleton, Friedberg, Wilson & Hennessey, P.C., Richard F. Hennessey, Susan M. Hargleroad, Karen E. Lorenz, Denver, Colorado, Attorneys for Petitioner.

Adam L. Plotkin, P.C., Adam L. Plotkin, Makyla M. Moody, Patricia A. Douglas Denver, Colorado, Attorneys for Respondent.

John W. Suthers, Attorney General, Laura E. Udis, First Assistant Attorney General, Denver, Colorado, Attorneys for Amicus Curiae Colorado Attorney General.

Justice HOBBS delivered the Opinion of the Court.

We granted certiorari in this Colorado Fair Debt Collection Practices Act[1] case to

---

**1.** The Colorado Fair Debt Collection Practices Act is codified at sections 12–14–101 to –137, C.R.S. (2007). Throughout this opinion we will

review a decision of the District Court for Boulder County upholding a decision of the County Court for Boulder County.[2] Both courts ruled that the debt collection communication that Mercantile Adjustment Bureau, LLC ("MAB") sent to Elizabeth Flood complied with the notice provisions of section 12–14–109, and that MAB did not violate section 12–14–105(2) when it utilized an automated mailing service to print and mail the communication.

We reverse the district court's judgment in part and affirm its judgment in part. We hold that MAB's debt collection communication violated the notice provisions of section 12–14–109, but the use of an automated mailing service to print and mail the communication did not violate section 12–14–105(2). Accordingly, we remand this case to the district court, with directions to return it to the county court for entry of judgment consistent with this opinion, including a determination of whether Flood is entitled to damages, costs, and attorney's fees pursuant to section 12–14–113.[3]

## I.

In January 2000, Flood purchased a used automobile. She financed the purchase through Citi Financial–Transouth ("Transouth"). Shortly after purchasing the car, Flood discovered it was damaged and returned it to the dealership. The dealer refused Flood's request for a refund; instead, the dealer provided Flood with a replacement vehicle.

In May 2000, the replacement vehicle began to exhibit electrical problems and, a few months later, broke down. Flood again sought to rescind the sale, but the dealer refused. Shortly thereafter, Flood lost her job and began to experience financial difficulties. After Flood missed several payments, Transouth repossessed her car and sold it for an amount less than what Flood owed on the vehicle. Transouth then transferred Flood's account to MAB.

On July 13, 2004, MAB sent Flood the written debt collection communication that is attached to this opinion as Appendix A.

MAB uses a mailing service, Unimail Corp. ("Unimail"), to print and mail its debt collection communications. It electronically transmits the necessary information to Unimail. Unimail then uses a mechanized process to print the communication, stuff and seal the envelopes, and place the sealed envelopes in the mail for delivery to the consumer. Unimail printed and mailed the above communication to Flood.

Flood filed suit against MAB in county court, bringing several claims under the Colorado statute. Flood alleged that the debt collection communication did not comply with section 12–14–109, because it failed to include necessary information and was contradictory about her rights and obligations under Colorado's statute. Flood also alleged that MAB impermissibly communicated with a third party, in violation of section 12–14–105(2), by outsourcing the printing and mailing of its collection communications to Unimail. Flood sought damages, costs, and attorney's fees against MAB pursuant to section 12–14–113 of the statute.

The county court entered judgment in favor of MAB, ruling that the collection communication complied with the notice require-

cite to the relevant provisions within the Colorado Revised Statutes.

2. We granted certiorari in this case to consider the following questions: (1) whether Colorado caselaw requires strict compliance with the notice provisions of the Colorado Fair Debt Collection Practices Act, and, if so, whether the notice here complied, when it gave notice to an alleged debtor using different language than that required by the statute; (2) whether the collection agency violated section 12–14–105(2) by outsourcing its operations to a prohibited company; and (3) whether a prevailing debt collector is entitled to recover costs under Colorado's gener-

al cost statute when the specific fees and cost provisions of section 12–14–113(1.5) are preempted by the Federal Fair Debt Collection Practices Act.

3. Because we have ruled in favor of Flood on the issue of whether MAB's collection communication complies with section 12–14–109, MAB is no longer a prevailing debt collector. Accordingly, we decline to address the third issue before us— whether a prevailing debt collector is entitled to recover costs under Colorado's general cost statute when the specific fees and cost provisions of section 12–14–113(1.5) are preempted by the Federal Fair Debt Collection Practices Act.

ments of section 12–14–109, and use of an automated mailing service did not violate the statute's prohibition against third party communication in connection with the collection of a debt.

MAB then filed a bill of costs in the county court, as well as a motion requesting attorney's fees pursuant to section 12–14–113(1.5) of the statute. The county court denied MAB's request for attorney's fees pursuant to section 12–14–113(1.5), holding that this provision was preempted by the federal Fair Debt Collection Practices Act. However, the trial court did award MAB certain costs pursuant to Colorado's general costs statute, section 13–16–105, C.R.S. (2007).

Flood appealed the county court's judgment to the district court. MAB cross-appealed the county court's denial of its motion for attorney's fees. The district court upheld the judgment of the county court.

## II.

We hold that MAB's debt collection communication violated the provisions of section 12–14–109, but the use of an automated mailing service to print and mail the communication did not violate section 12–14–105(2). Accordingly, we remand this case to the district court, with directions to return it to the county court for entry of judgment consistent with this opinion, including a determination of whether Flood is entitled to damages, costs, and attorney's fees pursuant to section 12–14–113 of the statute.

### A.

#### Standard of Review

■ We review issues of statutory construction de novo. *See CLPF–Parkridge One, L.P. v. Harwell Invs., Inc.,* 105 P.3d 658, 661 (Colo.2005); *Colo. Dep't of Labor & Employment v. Esser,* 30 P.3d 189, 194 (Colo. 2001). Our primary responsibility is to effectuate the General Assembly's intent. *CLPF–Parkridge One,* 105 P.3d at 660; *People v. Yascavage,* 101 P.3d 1090, 1093 (Colo.2004).

■ We construe a statute as a whole, giving consistent, harmonious, and sensible effect to all of its parts, and we will not adopt an interpretation that leads to illogical or absurd results. *Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist.,* 109 P.3d 585, 593 (Colo.2005); *Bd. of County Comm'rs, Costilla County v. Costilla County Conservancy Dist.,* 88 P.3d 1188, 1192 (Colo.2004).

■ In construing a statute, we may consider persuasive authority of another jurisdiction—for example, when Colorado's statute is closely patterned on a related federal statute, as here. *Furlong v. Gardner,* 956 P.2d 545, 551 (Colo.1998); *see also Udis v. Universal Commc'ns Co.,* 56 P.3d 1177, 1179 (Colo.App.2002) (relying on caselaw arising under the federal Fair Debt Collection Practices Act to assist in construing the Colorado Fair Debt Collection Practices Act).

In the case before us, the relevant provisions of the Colorado statute parallel the federal statute.[4] Because the Colorado statute is patterned on the federal statute, we look to federal caselaw for persuasive guidance bearing on the construction of our state's law. *See Udis,* 56 P.3d at 1180.

### B.

#### The Federal Statute

■ The purpose of the federal statute is to protect consumers from harassing and abusive debt collection practices. *See Russell v. Equifax,* 74 F.3d 30, 33 (2d Cir.1996). We have previously observed that the federal statute is a remedial consumer protection statute and should be liberally construed in favor of the consumer. *See Shapiro & Meinhold v. Zartman,* 823 P.2d 120, 124 (Colo. 1992). In construing the federal statute, courts assess compliance with its statutory provisions using the "least sophisticated consumer" standard. *E.g., Swanson v. S. Or. Credit Serv.,* Inc., 869 F.2d 1222, 1225 (9th Cir.1998) ("[I]f we find that the least sophis-

---

4. *Compare* § 12–14–109 (Colorado Act validation notice requirements), *and* § 12–14–105(2) (Colorado Act limitations on third party communications), *with* 15 U.S.C. § 1692g (2007) (Federal Act validation notice requirements), *and* 15 U.S.C. § 1692c(b) (2007) (Federal Act limitations on third party communications).

ticated debtor would likely be misled by the notice [sent to the consumer] ... we must hold that the credit service has violated the Act."); *United States v. Nat'l Fin. Servs. Inc.*, 98 F.3d 131, 135–36 (4th Cir.1996) (collecting cases); *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir.1993).

As the United States Court of Appeals for the Second Circuit observes, "The basic purpose of the least-sophisticated-consumer standard is to ensure that the [federal statute] protects all consumers, the gullible as well as the shrewd. This standard is consistent with the norms that courts have traditionally applied in consumer-protection law." *Clomon,* 988 F.2d at 1318.

■ The federal statute requires debt collectors to inform consumers about their right to require verification of the alleged debt, or any portion of the debt, by the collection agency. *See* 15 U.S.C. § 1692g (2007). This provision is intended to eliminate the ongoing problem of debt collectors pursuing the wrong person, or seeking to collect a debt that has already been paid. *See Terran v. Kaplan,* 109 F.3d 1428, 1431 (9th Cir.1997). In determining whether a collection communication complies with this provision, the federal courts have required that the information required by section 1692g must be effectively conveyed in a suitable size that can be "easily read" and does not contain "contradictory" phraseology:

> The [Federal Act] is not satisfied merely by inclusion of the required debt validation notice; the notice Congress required must be conveyed effectively to the debtor. It must be large enough to be easily read and sufficiently prominent to be noticed—even by the least sophisticated debtor. Furthermore, to be effective, the notice must not be overshadowed or contradicted by other messages or notices appearing in the initial communication from the collection agency.

*Swanson,* 869 F.2d at 1225; *see also Equifax,* 74 F.3d at 35 (holding that a collection communication that had all information required by section 1692g nevertheless violated that section because it impermissibly contained contradictory language that could cause the consumer to forgo her rights to contest the debt).

Contradictory language can impermissibly confuse the consumer about his or her rights and responsibilities under the statute. *Macarz v. Transworld Sys.,* Inc., 26 F.Supp.2d 368, 371 (D.Conn.1998). In *Bartlett v. Heibl,* 128 F.3d 497, 500 (7th Cir.1997), the United States Court of Appeals for the Seventh Circuit addressed several scenarios in which an unsophisticated consumer would be confused about her rights under the federal statute. The most likely scenario is a situation where the notice contains, but fails sufficiently to explain, "an *apparent* though not actual contradiction." *Id.* (emphasis in original). In *Heibl,* the court found an apparent contradiction in a collection communication that informed the consumer: (1) that he had thirty days within which to dispute a debt under the notice provision of the federal statute and, (2) if he did not pay the balance due within a week, he would be sued. *Id.* at 500–01 (holding that "the net effect of the juxtaposition of the one-week and thirty-day crucial periods is to turn the required disclosure into legal gibberish" in violation of the Federal Act).

## C.

### The Colorado Statute

■ Like the federal statute, the Colorado statute shares the remedial purpose of protecting consumers against debt collection practices that take advantage of gullible, unwary, trustful, or cowed persons who receive a debt collection communication. Because the least sophisticated consumer standard is consistent with the Colorado statute's consumer protection purpose, we adopt this standard for assessing violations of section 12–14–109's consumer notice requirements.

The Colorado statute also requires debt collectors to inform consumers about their right to require verification of the alleged debt by the collection agency. *See* § 12–14–109. Section 12–14–109 sets forth requirements applicable to the collection agency's collection communication in this case and states, in relevant part:

**Validation of debts.** (1) Within five days after the initial communication with a consumer in connection with the collection of any debt, *a debt collector or collection agency shall,* unless the following information is contained in the initial communication or the consumer has paid the debt, *send the consumer a written notice with the disclosures specified in paragraphs (a) to (e) of this subsection (1).* If such disclosures are placed on the back of the notice, the front of the notice shall contain a statement notifying consumers of that fact. Such disclosures shall state:

(a) The amount of the debt;

(b) The name of the creditor to whom the debt is owed;

(c) *That, unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector or collection agency;*

(d) *That, if the consumer notifies the debt collector or collection agency in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector or collection agency will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector or collection agency;*

(e) *That upon the consumer's written request within the thirty-day period, the debt collector or collection agency will provide the consumer with the name and address of the original creditor, if different from the current creditor.*

(2) *If the consumer notifies the debt collector or collection agency in writing within the thirty-day period* described in paragraph (c) of subsection (1) of this section that the debt, or any portion thereof, is disputed or that the consumer requests the name and address of the original creditor, *the debt collector or collection agency shall cease collection of the debt, or any disputed portion thereof, until the debt collection or collection agency obtains verification of the debt or a copy of a judgment or the name and address of the original creditor and mails a copy of such verification or judgment or name and address of the original creditor to the consumer.*

§ 12–14–109, C.R.S. (2007) (emphasis added).

■ These provisions confer upon the recipient of a debt collection communication the right to obtain from the debt collection agency proof that he or she actually incurred the debt or suffered the judgment upon which the collection effort is based. This important right guards against such problems as identity theft, sending a debt collection communication to a person who has the same name as the debtor but is not that person, seeking an amount of payment that exceeds the debt owed, and seeking collection of a debt that has already been paid. However, the recipient of the communication loses the right to require that the collection agency provide this information if he or she fails to dispute the debt, or any portion thereof, *in writing* within thirty days of receipt of the collection agency's communication. *See* § 12–14–109(c)–(e) (emphasis added).

### D.

### MAB's Debt Collection Communication Violates Colorado's Statute

■ In this case, MAB's debt collection communication contains two apparent contradictions likely to confuse the consumer. First, the letter portion of the communication encourages Flood to contact MAB orally, while the required validation notice—which states that Flood must contact MAB in writing to take advantage of her rights under the Colorado Act—is buried in the fine print appended to the bottom of the communication. This structure is likely to confuse the least sophisticated consumer about the necessary means of communicating with MAB in order to dispute the debt.

Second, the conflicting deadlines contained in the communication further cloud the consumer's understanding of her legal rights under the Colorado statute. On the one hand, the consumer is presented with a date certain of August 21, 2004—thirty-nine days from the date of the communication—to take advantage of MAB's settlement offer. On the other hand, the consumer is informed

that she has thirty days from receiving the communication to dispute in writing the validity of the debt.

The letter portion of the communication is two short paragraphs and appears to bear the signature of a real person:

Your account with CITI FINANCIAL-TRANSOUTH has been listed with our office for collection. The balance due is $5604.45. If you don't agree with the balance it is important that you contact our office to discuss this matter.

Please be advised that our client has authorized us to offer you substantial savings to settle this account. We will accept $2522.00 if payment is received by 08–21–04. Contact our office for more information.

Respectfully,

J. Dial

Mercantile Adjustment Bureau, LLC

P.O. Box 9315A

Rochester, N.Y. 14604

1–877–230–8414

Thus, the letter portion of the communication is cordial and encouraging. It purports to contain J. Dial's phone number. It underscores the importance of picking up the phone "to discuss this matter" if you "don't agree with the balance." It promises to cut the asserted debt in half if payment is received by August 21, 2004—thirty-nine days from the communication's date.

However, the letter portion of the communication does not clearly state that the recipient is entitled to have proof that she actually owes the asserted debt. Nor does it state that the recipient loses this right if she fails to dispute in writing all or any portion of the debt within thirty days of receiving the communication.

To the contrary, the letter portion of the communication invites a phone call as the only necessary means for disputing the debt and it sets forth no deadline for making this phone call. The letter portion of the communication ends with the closing "Respectfully." This closing is clearly intended to convey that the writer is dedicated to protecting all of the recipient's rights in the matter.

Furthermore, "J. Dial" is a fictitious person, and only the smaller print below the letter portion of the communication refers to the thirty day written notice provision upon which the statutory rights of the letter recipient turn. The rest of the debt collection communication below the signature block of the letter portion states:

THERE WILL BE A $20.00 FEE ADDED ON ALL RETURNED CHECKS.

*THIS COMMUNICATION IS FROM A DEBT COLLECTOR THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.*

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume the debt is valid. If you notify this office in writing within 30 days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

*FOR MORE INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION ACT VISIT WWW.AGO. STATE.CO.US/CAB.HTM.*

"Pick up the phone and let's talk, you really don't need to write" is plainly the tone and content of the letter portion of the communication. The gullible, unwary, trustful, or cowed recipient—the least sophisticated consumer—can easily rely only on this section of the communication to his or her detriment. "J. Dial" clearly appears to be speaking on behalf of MAB for everything above the signature line, including the apparent representation that one can effectively dispute the debt orally for all purposes. If the recipient reads down to the printed material below J. Dial's "signature," the import of the smaller print is veiled, confused, contradictory, and overshadowed by the letter portion of the communication.

In addition, the only date mentioned in the letter portion of the communication is the date for taking advantage of the half-payment offer—August 21, 2004, thirty-nine days from the date of the communication. If a consumer receiving the communication waited until the end of the thirty-nine day period to make a written request for verification of the debt, he or she would be beyond the thirty day period for invoking this right in writing.

We conclude that MAB's communication to Flood did not comply with Colorado's statute; the county court and district court erred in concluding otherwise. In the letter portion of the communication, MAB prominently and expressly encouraged Flood to contact it by phone if she had any issue with the alleged debt, and it made an offer to settle the matter.

■ Our decision today does not prohibit or penalize a collection agency from inviting oral communication or making a settlement offer. Such invitations may aid the consumer, and the statute allows them. However, when these invitations are made, the collection agency must prominently alert the consumer: (1) of his or her right to documentation verifying the amount of the debt and that the consumer actually owes the debt, and (2) that the consumer must make a written request for verification within thirty days of receiving the communication or else lose this right. This is what the General Assembly clearly intends for the notices contained in section 12–14–109 to accomplish.

The peculiar wording of the debt collection communication in this case leads the least sophisticated consumer into believing that oral communication alone will suffice to trigger all of her rights under the statute. In the personalized letter portion inviting oral communication, there is no prominently displayed message of her right under sections 12–14–109(1)(d) and –109(2) to receive verification of the debt from MAB and explaining that this right would be lost if she did not dispute the debt in whole or part by writing

within thirty days of receiving the communication.

This debt collection communication as a whole is confusing, contradictory, and misleading in light of the message contained in the letter portion of the communication. The extended time for taking advantage of the settlement offer—couched within a personalized assurance that all her rights will be preserved through oral communication—effectively misleads the consumer into delaying the transmission of the consumer's written request for the verifying documentation, thereby causing the loss of valuable consumer rights.

■ The overarching purpose of the Colorado statute is to prevent and remedy deceptive and abusive debt collection practices. See §§ 12–14–106 to –108 (forbidding harassing, abusive, misleading, and unfair debt collection practices). While the statute provides that the collection agency may make the required section 12–14–109 disclosures on the back of the notice if the front of the notice contains a statement notifying consumers of that fact, see § 12–14–109(1), the statute does not authorize the collection agency to couch, conceal, veil, contradict, or minimize the required disclosures so as to confuse or mislead the consumer into foregoing her rights.

When a consumer disputes in writing the alleged debt in whole or in part, the agency must cease further debt collection efforts while it gathers and supplies verifying proof of the debt to the consumer, pursuant to section 12–14–109(2).[5] The General Assembly intended that these verification-of-debt and cessation-of-debt-collection rights be a functioning part of the statute. The consumer's choice not to invoke these rights must be preceded by the collection agency's plain, effective, and unqualified conveyance of the notices required by section 12–14–109. For the aforementioned reasons, we hold that the collection communication sent to Flood by MAB failed to effectively convey the required notices.

---

**5.** In addition, section 12–14–107(1)(i) of the Colorado Statute requires that when communicating with any person about a disputed debt, including

credit reporting agencies, the debt collector must inform those agencies that the debt is disputed.

## E.

### MAB's Use of an Automated Mailing Service Does Not Violate Section 12–14–105(2)

 Flood also argues that MAB violated section 12–14–105(2) by using an automated mailing service to prepare and mail its debt collection communications. With certain exceptions, section 12–14–105(2) prohibits communications between a debt collector and third parties. Our analysis of section 12–14–105(2) leads us to conclude that the General Assembly did not intend for section 12–14–105(2) to prohibit a debt collector from using an automated mailing service.

 The federal statute contains a nearly identical provision, 15 U.S.C. § 1692c(b) (2007). The purpose of section 1692c(b) is to "protect a consumer's reputation and privacy, as well as to prevent loss of jobs resulting from a debt collector's communication with a consumer's employer concerning the collection of a debt." *West v. Costen*, 558 F.Supp. 564, 575 (W.D.Va.1983) (citations omitted).

The record here shows that MAB utilized an entirely automated printing and mailing service. The county court found that MAB electronically transmitted the information included in its collection communications to Unimail. Unimail then printed the collection communications, which were mechanically stuffed into envelopes.

The county court concluded that the use of such a highly automated procedure did not violate section 12–14–105(2) because it did not threaten the consumer with the risk of being coerced or embarrassed into paying a debt because the debt collector contacted an employer, family member, friend, or other third party. *See also Pearce v. Rapid Check Collection, Inc.*, 738 F.Supp. 334, 337 (D.S.D. 1990) (holding that a debt collector's communication to the bank at which the consumer had bounced two checks did not constitute impermissible third party contact because there was no chance the communication was used to embarrass the plaintiff and no chance that the communication would cause an invasion of privacy or loss of employment).

We agree with the holding of the county court. The use of an automated mailing service, such as Unimail, by a debt collector is a *de minimis* communication with a third party that cannot reasonably be perceived as a threat to the consumer's privacy or reputation. *Cf.* FTC Official Staff Commentary § 805(b)(3), 53 Fed.Reg. 50097, 50104 (Dec. 13, 1988) (stating that "incidental contacts" between a debt collector and a telephone company for the purpose of transmitting information to the consumer do not constitute an impermissible communication with a third party).

Accordingly, we hold that MAB's use of Unimail to automatically print and mail its debt collection communications did not violate section 12–14–105(2). Thus, we affirm that part of the district court's judgment upholding the county court's judgment on this issue.

In light of our holding that MAB violated section 12–14–109, we vacate that portion of the county court's and district court's judgment against Flood and award of costs to MAB. We direct the county court, on remand, to determine whether Flood is entitled to statutory damages, costs, and attorney's fees as provided in section 12–14–113.

## III.

Accordingly, we reverse the judgment of the district court in part and affirm the judgment in part. We remand this case to the district court, with directions to return the case to the county court for further proceedings consistent with this opinion.

Justice EID concurs in part and dissents in part, and Justice RICE and Justice COATS join in the concurrence and dissent.

Justice EID, concurring in part and dissenting in part.

While I agree with the majority that MAB may use an automated mailing service, *see* maj. op. at 777, I disagree with its holding that "MAB's debt collection communication violated the notice provisions of section 12–14–109." *Id.* at 771. The majority does not dispute that MAB's disclosures to Flood contained all of the information required by section 12–14–109; instead, it finds that the

disclosures contained "two apparent contradictions likely to confuse the consumer." Maj. op. at 774. Unlike the majority, I would find MAB's disclosures to be in compliance with section 12–14–109. In my view, the majority's holding today—which penalizes MAB for permitting consumers to contact it by phone and for giving consumers additional time to consider a settlement offer after they dispute a debt—may well harm consumers in the long run. I therefore respectfully dissent from the majority's holding that MAB's disclosures violated section 12–14–109.

## I.

Section 12–14–109 requires a collection agency to send a consumer written notice containing the following five disclosures:

(a) The amount of the debt;

(b) The name of the creditor to whom the debt is owed;

(c) That, unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector or collection agency;

(d) That, if the consumer notifies the debt collector or collection agency in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector or collection agency will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector or collection agency;

(e) That upon the consumer's written request within the thirty-day period, the debt collector or collection agency will provide the consumer with the name and address of the original creditor, if different from the current creditor.

§ 12–14–109(1)(a)–(e), C.R.S. (2007). The majority does not dispute that MAB's disclosure complied with these requirements, as its letter to Flood contained the amount of the debt, MAB's name, and an almost verbatim restatement of the language of subsections (c), (d), and (e) regarding Flood's rights (1) to dispute the debt, (2) to request, in writing, a verification of the debt, and (3) to request, in writing, the name and address of the original creditor. See maj. op. appendix A. MAB had no additional duties under section 12–14–109 unless and until Flood disputed her debt. See § 12–14–109(2).[1]

Despite MAB's compliance with section 12–14–109, the majority concludes that MAB's letter to Flood contained "two apparent contradictions" that "couch, conceal, veil, contradict, or minimize the required disclosures so as to confuse or mislead [Flood] into foregoing her rights." Maj. op. at 774, 776. In my view, however, these "apparent contradictions" are illusory.

## A.

The first "apparent contradiction," according to the majority, is that "the letter portion of the communication encourages Flood to contact MAB orally," while the required disclosures are "buried in the fine print appended to the bottom of the communication." [2] Id. at 774. The majority posits that somehow the consumer will be confused and at-

---

1. Section 12–14–109(2) requires that if the consumer provides a written dispute or request for the original creditor's name and address, then the collection agency must cease its debt collection activities until it mails a verification or the requested name and address to the consumer. However, the fact that a written dispute will stop collection activities is not one of the disclosures required by section 12–14–109. See § 12–14–109(d), (e) (requiring disclosure only of the consumer's ability to request debt verification as well as the original creditor's name and address). The majority opinion might be read to suggest that the collection agency must provide the consumer with some notice of her right to stop

collection activities while the requested information is obtained. See maj. op. at 776 (stating that the consumer must have adequate notice before choosing not to invoke her right to cessation of debt-collection activities). But the statute contains no such requirement.

2. The majority goes so far as to state that "MAB prominently and *expressly* encouraged Flood to contact it by *phone.*" Maj. op. at 776 (emphasis added). This is obviously not the case, as the actual language of the letter to Flood does not use the words "call" or "phone," and in fact, it provides MAB's mailing address *before* MAB's phone number.

tempt to invoke her section 12–14–109 rights orally, instead of in writing. *Id.* at 774–76. But importantly, only two rights must be invoked in writing: the right to obtain a verification of the debt, and the right to obtain the name and address of the original creditor. *See* § 12–14–109(d), (e). Those two rights are not discussed in the body of the letter, and only appear in the disclosures, which clearly state that the requests must be in writing. These express statements are not, in my view, contradicted in any way by the body of the letter, which urges that "[i]f you don't agree with the balance it is important that you contact our office to discuss this matter," and includes an address and phone number. Significantly, this statement is in full compliance with section 12–14–109(c), which—in contrast to subsections (d) and (e)—permits the consumer to dispute the debt orally. *See* § 12–14–109(c) (omitting any reference to "in writing" or "written request"). This statement is also entirely consistent with the letter's disclosures, which, as noted above, contain an almost verbatim recitation of subsection (c).

The majority apparently believes that *any mention* of oral communication in connection with debt collection, whatever the context and for whatever purpose, will necessarily contradict an express statement requiring writing in certain instances. In other words, according to the majority, a consumer will assume that if she can contact the collection agency orally for some purposes, she can do so for all purposes. Maj. op. at 775. Yet this is how the statute is structured: Subsection (d) and (e) rights must be invoked in writing, but the right described in subsection (c) may be invoked through written or oral communication. This distinction is in the statute, and MAB should not be faulted for replicating it.

After today, to avoid any such "confusion" posited by the majority, collection agencies may simply prevent consumers from contacting them by phone. For many consumers, however, phoning is the easiest, most convenient, and most accessible means of communication. By equating any mention of oral communication with confusion, today's deci-

sion, in my view, will ultimately harm the very people the majority seeks to help.

The majority also faults MAB for failing to mention Flood's section 12–14–109 rights in the body of the letter, and accuses it of "bur[ying]" the disclosures "in the fine print" at the bottom of the letter. Maj. op. at 774. As for the "fine print," the typeface used in the body of the letter is virtually the same size as the typeface used in the disclosures. More importantly, the majority's complaint that "there is no prominently displayed message of [Flood's] right," *id.* at 776, is curious considering that its analysis is entirely dependent upon its belief that the consumer would perceive contradictions between the body of the letter and the disclosures. In other words, under the majority's theory, the disclosures must have been "sufficiently prominent to be noticed." *Swanson v. S. Or. Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir.1988) (applying this requirement to disclosures in debt collection letters). In fact, MAB could have placed the disclosures on the back of the letter to Flood, or it could have sent the letter alone and then waited up to five days before sending the disclosures. *See* § 12–14–109(1). It was certainly not required to place the disclosures in the body of the letter, as the majority seems to contemplate. *See* maj. op. at 775 (noting that the body of the letter "does not clearly state" recipient's section 12–14–109 rights). In sum, MAB's disclosures were far more prominent than what the statute requires.

It is true that a consumer who reads only the body of the letter will not be informed of her legal rights. *See* maj. op. at 775. However, a consumer who reads the entire letter—i.e., all the language plainly visible on the front page—will be informed both that she may contact MAB, either in writing or orally, to dispute her debt *and* that she may request, in writing, verification of the debt and the name and address of the original creditor. Neither section 12–14–109 nor the least sophisticated consumer standard requires anything more. *See Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 418 (7th Cir.2005) (stating that the least sophisticated consumer is deemed to possess "rudimentary knowledge" and to be "capable of making

basic logical deductions and inferences"); *Clomon v. Jackson,* 988 F.2d 1314, 1319 (2d Cir.1993) ("[E]ven the 'least sophisticated consumer' can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care.") (citation omitted).

## B.

The majority's second "apparent contradiction" is "the conflicting deadlines contained in the communication"—thirty-nine days to take advantage of MAB's settlement offer and thirty days to dispute the validity of the debt. Maj. op. at 774. It offers no analysis of why the two dates are contradictory, except for the fact that they are different. Again, as with the written and oral communication issue discussed above, difference is not necessarily confusion. We must examine *the reason* for the difference. With regard to the dates included in the letter, common sense and caselaw require that the settlement date be later than the thirty day dispute date.

A consumer in Flood's position has two payment options: She can pay the debt, or pay the settlement amount (which is less than half that amount). But before making any payment, she would want to know first if the debt was valid. Thus, a consumer in Flood's position should dispute the debt first, and then, if the debt ends up being valid, pay the lesser settlement amount. If the statute entitles her to thirty days to dispute the debt amount, *see* section 12–14–109(2), then the settlement deadline should be set beyond the thirty days. Thus, the fact that MAB's settlement deadline is later than the dispute deadline is not *confusing* to the consumer, as the majority believes, it is *helpful* to the consumer.

To put it somewhat differently, if the settlement deadline were the same as the dispute deadline—as the majority seems to require—Flood would have been forced to choose either to settle the debt or to take advantage of the full thirty days to which she was legally entitled for the purpose of disputing the debt. *See* § 12–14–109(2). According to the federal courts' interpretation of the least sophisticated consumer standard, this type of choice is impermissibly contradictory and coercive. *See, e.g., Peter v. GC Servs. L.P.,* 310 F.3d 344, 349 (5th Cir.2002) ("Courts have generally found contradiction or apparent contradiction of the printed ... notice where payment is demanded in a concrete period shorter than the thirty day statutory contest period."); *Graziano v. Harrison,* 950 F.2d 107, 111 (3d Cir.1991) ("There is a reasonable probability that the least sophisticated debtor, faced with a demand for payment within ten days and a threat of immediate legal action if payment is not made in that time, would be induced to overlook his statutory right to dispute the debt within thirty days."); *Swanson,* 869 F.2d at 1225–26 (same). If the federal standard does indeed apply in Colorado, *see* maj. op. at 773, then MAB was required to set the settlement deadline later than the dispute deadline.

Today's opinion, combined with federal caselaw, effectively prohibits collection agencies from setting *any* deadline for acceptance of settlement offers. A thirty day deadline (or less) will be deemed coercive by federal caselaw, but a deadline of more than thirty days will be deemed confusing under the majority's decision. The combined effect of the federal caselaw and the majority's opinion will be to discourage, and perhaps bar, settlement offers in Colorado. Yet for many consumers, accepting the settlement amount—which is less, and in many cases far less, than the debt amount—will be the best option. Again, as with the issue of oral communications, I fear that the majority's approach will ultimately harm consumers.

## II.

MAB's disclosures comply with the requirements of section 12–14–109, and contain no contradictory information. I therefore respectfully dissent from that portion of the majority's opinion holding that MAB's disclosures violated section 12–14–109.

I am authorized to state that Justice RICE and Justice COATS join in this concurrence and dissent.

Appendix A (Debt Communication Letter, consumer's personal information redacted)

P.O. Box 9315A
Rochester, NY 14604-0999

5170593
Forwarding and address correction requested.

**MERCANTILE**
Innovative Solutions, Exceptional Results

| ACCOUNT NUMBER | REFERENCE NUMBER |
|---|---|
| | |
| | **AMOUNT ENCLOSED** |
| | $ |

ADDRESSEE:

ELIZABETH FLOOD

MAKE CHECK PAYABLE TO:
Mercantile Adjustment Bureau, LLC
P.O. Box 9315A
Rochester, New York 14604

PLEASE DETACH AND RETURN TOP PORTION WITH YOUR PAYMENT

Mercantile Adjustment Bureau, LLC
P.O. Box 9315A
Rochester, New York 14604

ELIZABETH FLOOD

ACCOUNT NO.
REFERENCE NO.

07-13-04

Your account with CITI FINANCIAL-TRANSOUTH has been listed with our office for collection. The balance due is $5604.45. If you don't agree with the balance it is important that you contact our office to discuss this matter.

Please be advised that our client has authorized us to offer you substantial savings to settle this account. We will accept $2522.00 if payment is received by 08-21-04. Contact our office for more information.

Respectfully,

*J. Dial*

J. Dial
Mercantile Adjustment Bureau, LLC
P.O. Box 9315A
Rochester, NY 14604
1-877-230-8414

**THERE WILL BE A $20.00 FEE ADDED ON ALL RETURNED CHECKS.**

*THIS COMMUNICATION IS FROM A DEBT COLLECTOR
THIS IS AN ATTEMPT TO COLLECT A DEBT.
ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.*

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume the debt is valid. If you notify this office in writing within 30 days from receiving this notice, this office will: obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

*FOR MORE INFORMATION ABOUT THE COLORADO FAIR DEBT COLLECTION ACT VISIT
WWW.AGO.STATE.CO.US/CAB.HTM.*

PLAINTIFF'S
EXHIBIT