The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
October 18, 2018

## 2018COA150

**No. 17CA1504 Garrett v. Credit Bureau — Consumers —
Colorado Fair Debt Collection Practices Act — Least
Sophisticated Consumer**

A division of the court of appeals considers whether a debt

collector's communications with a consumer complied with the

Colorado Fair Debt Collection Practices Act (CFDCPA). Here, a

consumer sued a collection agency, asserting that the language of

its communications overshadowed and contradicted the statutory

requirements of the CFDCPA.

In resolving this case, the division elaborates upon and applies

the "least sophisticated consumer" standard identified in *Flood v.

Mercantile Adjustment Bureau, LLC*, 176 P.3d 769 (Colo. 2008), for

determining compliance under the CFDCPA.

Reviewing the issue de novo, the division concludes that the collection agency's use of the bold and capitalized phrase "**WE CANNOT HELP YOU UNLESS YOU CALL**" would be confusing to the "least sophisticated consumer."

COLORADO COURT OF APPEALS      **2018COA150**

Court of Appeals No. 17CA1504
Arapahoe County District Court No. 16CV32132
Honorable John L. Wheeler, Judge

Deborah Garrett,

Plaintiff-Appellant,

v.

Credit Bureau of Carbon County, d/b/a Collection Center, Inc.,

Defendant-Appellee.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE DAILEY
Lichtenstein and Ashby, JJ., concur

Announced October 18, 2018

The Law Office of Gary Merenstein, P.C., Gary Merenstein, Lafayette, Colorado;
Berg Hill Greenleaf Ruscitti, LLP, Alan C. Friedberg, Boulder, Colorado, for
Plaintiff-Appellant

Edmonds & Logue, P.C., Rocky L. Edmonds, Jeffrey M. Logue, Fort Collins,
Colorado, for Defendant-Appellee

¶ 1     Debt collectors sometimes attempt to collect debts from the wrong person, debts that a consumer has already paid, and debts in an amount a consumer does not owe.  Among other things, the Colorado Fair Debt Collection Practices Act (CFDCPA), sections 5-16-101 to -135, C.R.S. 2018,[1] gives a consumer rights to require debt collectors to provide (1) notice of the consumer's right to dispute the debt and (2) proof of the validation (or verification) of the debt.  With respect to the former right, the supreme court has determined that the CFDCPA prohibits debt collectors from providing notices that would be misleading or confusing to the least sophisticated consumer.

¶ 2     Colorado law is largely silent on the attributes of a "least sophisticated consumer."  And it is also silent on who — judge or jury — determines what such a consumer would understand.  In this opinion, we address those issues — and others — in reversing the district court's order granting summary judgment for defendant,

---

[1]  The CFDCPA was previously codified at sections 12-14-101 to -137, C.R.S. 2016.  This entire article was repealed in HB 17-1238, Ch. 260, secs. 1, 25, 26, 2017 Colo. Sess. Laws 1079-1105, 1176, effective August 9, 2017, and relocated to sections 5-16-101 to -135, C.R.S. 2018.

Credit Bureau of Carbon County, d/b/a Collection Center, Inc. (Credit Bureau), and against plaintiff, Deborah Garrett.

## I.   Background

¶ 3   Credit Bureau is an agency that collects or attempts to collect debts owed, due, or asserted to be owed or due to another.  On July 12, 2016, it sent Garrett a collection notice demanding payment in the amount of $834.96 on a consumer debt allegedly owed to the University of Colorado Hospital.  On August 1, 2016, Credit Bureau sent Garrett a second collection notice.

¶ 4   Subsequently, Garrett sued Credit Bureau based on the contents of the two notices.  In her amended complaint, she sought statutory damages, reasonable attorney fees, and costs because of abusive, deceptive, and unfair practices prohibited by the CFDCPA.

¶ 5   Both parties asserted that there were no disputed material facts, and both parties filed dispositive motions.  In a very detailed, twenty-seven-page written analysis, the district court concluded that Credit Bureau's notices had not violated the CFDCPA. Consequently, the court denied Garrett's motion for judgment on the pleadings, granted Credit Bureau's motion for summary judgment, and dismissed the case.

## II.     Credit Bureau's Notices

¶ 6     Garrett contends that the district court wrongly concluded that Credit Bureau did not violate the CFDCPA.  We agree.

¶ 7     We review de novo the district court's grant of summary judgment.  *TCD, Inc. v. Am. Family Mut. Ins. Co.*, 2012 COA 65, ¶ 6. Summary judgment should be granted only if there is a clear showing that no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law.  *Id.*

¶ 8     Because we agree with the parties that there is no genuine issue of material fact, the question in this case is whether Credit Bureau is entitled to judgment as a matter of law.

### A.     General Principles

¶ 9     In *Flood v. Mercantile Adjustment Bureau, LLC*, 176 P.3d 769 (Colo. 2008), the supreme court recognized that the CFDCPA and its federal counterpart, the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692 to 1692p (2018), "share[] the remedial purpose of protecting consumers against debt collection practices that take advantage of gullible, unwary, trustful, or cowed persons

3

who receive a debt collection communication."  176 P.3d at 773.[2]
To this end, those statutes require debt collectors or collection
agencies to (1) provide a "debt validation" notice and (2) refrain from
engaging in certain types of acts.  *See id.* at 774.

¶ 10     Regarding the "debt validation" notice, section 5-16-109(1),
C.R.S. 2018 requires that a debt collector or collection agency send
a consumer debtor a written notice disclosing, as pertinent here,
the following:

> (a) The amount of the debt;
>
> . . . .
>
> (c) That, unless the consumer, within thirty
> days after receipt of the notice, disputes the
> validity of the debt, or any portion thereof, the
> debt will be assumed to be valid by the debt
> collector or collection agency;
>
> (d) That, if the consumer notifies the debt
> collector or collection agency in writing within
> the thirty-day period that the debt, or any

---

[2] Because the CFDCPA's provisions parallel those of the FDCPA, the court in *Flood v. Mercantile Adjustment Bureau, LLC*, looked to "federal caselaw for persuasive guidance bearing on the construction of our state's law."  176 P.3d 769, 772-73 (Colo. 2008). Similarly, we may look to federal cases applying the FDCPA for guidance.  *See Adams v. Corr. Corp. of America*, 264 P.3d 640, 643 (Colo. App. 2011) ("When a federal law is similar to a Colorado statute, federal cases may be useful, although not determinative, in analyzing comparable language in the Colorado provision.").

portion thereof, is disputed, the debt collector or collection agency will obtain verification of the debt or a copy of a judgment against the consumer and a copy of the verification or judgment will be mailed to the consumer by the debt collector or collection agency . . . .[3]

¶ 11    As to prohibited activities, the CFDCPA forbids a debt collector or collection agency from using "any false, deceptive, or misleading representation" in collecting a debt. § 5-16-107(1), C.R.S. 2018. In *Flood,* the supreme court noted with approval that federal authorities require that statutorily mandated disclosures

> be effectively conveyed in a suitable size that can be "easily read" and does not contain "contradictory" phraseology:

---

[3] Relatedly, section 5-16-109(2), C.R.S. 2018, states as follows:

> If the consumer notifies the debt collector or collection agency in writing within the thirty-day period described in subsection (1)(c) of this section that the debt, or any portion thereof, is disputed or that the consumer requests the name and address of the original creditor, the debt collector or collection agency shall cease collection of the debt, or any disputed portion thereof, until the debt collection or collection agency obtains verification of the debt or a copy of a judgment or the name and address of the original creditor and mails a copy of the verification or judgment or name and address of the original creditor to the consumer.

5

> The [FDCPA] is not satisfied merely by inclusion of the required debt validation notice; the notice Congress required must be conveyed effectively to the debtor. It must be large enough to be easily read and sufficiently prominent to be noticed — even by the least sophisticated debtor. Furthermore, to be effective, the notice must not be overshadowed or contradicted by other messages or notices appearing in the initial communication from the collection agency.

*Flood*, 176 P.3d at 773 (quoting *Swanson v. S. Or. Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1998)).

¶ 12    Overshadowing occurs when the collection letter contains the requisite validation notice, but that information is obscured or diminished by the letter's presentation or format. *See, e.g., Pollard v. Law Office of Mandy L. Spaulding*, 766 F.3d 98, 104 (1st Cir. 2014) (Overshadowing is "[t]ypically . . . based upon the visual characteristics of a collection letter, such as when a letter demands payment in large, attention-grabbing type and relegates the validation notice to fine or otherwise hard-to-read print."); *Conquest v. Plaza Servs., LLC*, No. 2:17cv106, 2017 WL 3401513, at *4 (E.D. Va. Aug. 8, 2017) ("A validation notice is 'overshadowed' when a letter's 'manner of presentation' would mislead a consumer to

6

disregard the notice." (quoting *Turner v. Shenandoah Legal Grp., P.C.*, No. 3:06cv045, 2006 WL 1685698, at \*6 (E.D. Va. June 12, 2006))); *Seplak v. IMBS, Inc.*, No. 98 C 5973, 1999 WL 104730, at \*3 n.3 (N.D. Ill. Feb. 23, 1999) ("Overshadowing ordinarily occurs through the use of inconsistent, unusually small, or confusing typeface.").

¶ 13     Contradiction "occurs where language which accompanies the validation notice is inconsistent with and therefore contradicts the substance of the rights and duties imposed by [the statute]." *Morgan v. Credit Adjustment Bd., Inc.*, 999 F. Supp. 803, 807 (E.D. Va. 1998); *see McMurray v. ProCollect, Inc.*, 687 F.3d 665, 668 (5th Cir. 2012) ("A debt collector may violate [the FDCPA] if other language in its communication with consumers . . . is 'inconsistent with' the statutorily-mandated notice." (quoting 15 U.S.C. § 1692g(b) (2018))). "Inconsistencies . . . can occur in various shapes and sizes. They may be either literal or apparent." *Pollard*, 766 F.3d at 104. An example of an "apparent" contradiction is "where [a collection agency's] letter both demands payment within thirty days and explains the consumer's right to demand validation within thirty days, [because] confusion will result if the letter does

not also explain how these two rights fit together." *Wilson v. Quadramed Corp.*, 225 F.3d 350, 355 n.4 (3d Cir. 2000).

¶ 14    In *Pollard,* the First Circuit Court of Appeals aptly noted:

> Whether the controversy centers on overshadowing or inconsistency, the inquiry reduces to whether a particular collection letter would confuse the unsophisticated consumer. This inquiry is to be conducted with a recognition that confusion can occur in a myriad of ways, such as when a letter visually buries the required validation notice, contains logical inconsistencies, fails to explain an apparent inconsistency, or presents some combination of these (or similar) vices. In the last analysis, a collection letter is confusing if, after reading it, the unsophisticated consumer would be left unsure of her right to dispute the debt and request information concerning the original creditor.

766 F.3d at 104 (citations omitted).

### B.    *Garrett's Contentions*

¶ 15    There is no dispute that, in its July 12, 2016, debt validation notice, Credit Bureau provided Garrett with the information mandated by subsections 5-16-109(1)(c) and (d).[4]  But Garrett

---

[4] The back of the July 12, 2016, notice provided, in pertinent part, as follows:

8

contends that this information was contradicted by other language in the July 12 and August 1 notices or overshadowed by the language or format Credit Bureau used in presenting the information. She also contends that Credit Bureau did not sufficiently disclose the amount of her purported debt, as required by section 5-16-109(1)(a).

¶ 16    We need not address Garrett's second contention because we conclude that, for purposes of the CFDCPA, Credit Bureau's debt validation notices were confusing.

---

> Unless you, the consumer, notify this collection agency within thirty days after the receipt of this notice that you dispute the validity of the debt or any portion thereof, the debt will be assumed to be valid by this collection agency. If you, the consumer, notify this collection agency in writing within thirty days after receipt of this notice, that the debt or any portion thereof is disputed, this collection agency will obtain verification of the debt or a copy of a judgment against you and a copy of such verification or judgment will be mailed to you by this collection agency. Upon your written request sent within thirty days after receipt of this notice, this collection agency will provide you with the name and address of the original creditor if different from the current creditor.

## C. Credit Bureau's Notices Were Confusing with Respect to the Required Section 5-16-109(1)(c) and (d) Disclosures

### 1. Confusing to Whom?

¶ 17    In *Flood*, the supreme court adopted the "least sophisticated consumer" (or debtor) standard for determining whether a collection agency's notice was confusing with respect to statutorily required disclosures.  176 P.3d at 773.  "This standard recognizes that the [CFDCPA] protects the gullible and the shrewd alike while simultaneously presuming a basic level of reasonableness and understanding on the part of the debtor, thus preventing liability for bizarre or idiosyncratic interpretations of debt collection notices." *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 533 (6th Cir. 2014) (applying FDCPA).  "The test is objective, and asks whether there is a reasonable likelihood that an unsophisticated consumer who is willing to consider carefully the contents of a communication might yet be misled by them."  *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 172 (6th Cir. 2011).[5]

------

[5] As noted, "[t]he standard is an objective one, meaning that the specific plaintiff need not prove that *she* was actually confused or misled, only that the objective least sophisticated debtor would be." *Jensen v. Pressler & Pressler*, 791 F.3d 413, 419 (3d Cir. 2015); *see Pollard v. Law Office of Mandy L. Spaulding*, 766 F.3d 98, 103 (1st

¶ 18    The "least sophisticated consumer" (or debtor) is one who does not have "the astuteness of a 'Philadelphia lawyer' or even the sophistication of the average, everyday, common consumer." *Russell v. Equifax A.R.S.*, 74 F.3d 30, 34 (2d Cir. 1996).  This consumer is "neither shrewd nor experienced in dealing with creditors." *McMurray*, 687 F.3d at 669 (quoting *Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488, 495 (5th Cir. 2004)).  This consumer is "gullible, unwary, trustful, or cowed." *Flood*, 176 P.3d at 773.

¶ 19    The least sophisticated consumer is, though, "neither irrational nor a dolt." *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010).  This consumer is "presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care.'" *Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir. 1993)); *see Williams v. OSI Educ. Servs., Inc.*, 505 F.3d 675, 678 (7th Cir. 2007) ("The

Cir. 2014) ("[T]he FDCPA does not require that a plaintiff actually be confused."); *see also Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 91 (2d Cir. 2008) ("[T]he FDCPA enlists the efforts of sophisticated consumers . . . as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.").

11

unsophisticated consumer . . . possesses 'rudimentary knowledge about the financial world, is wise enough to read collection notices with added care, possesses "reasonable intelligence," and is capable of making basic logical deductions and inferences.'" (quoting *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1060 (7th Cir. 2000))).[6] The least sophisticated consumer is also assumed to

---

[6] As noted by the District of Columbia Circuit Court of Appeals:

> The term "unsophisticated" [consumer] is probably more accurate because the "least sophisticated" consumer is "not merely 'below average,' he is the very last rung on the sophistication ladder," and "would likely not be able to read a collection notice with care (or at all), let alone interpret it in a reasonable fashion."

*Jones v. Dufek*, 830 F.3d 523, 525 n.2 (D.C. Cir. 2016) (quoting *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994)).

Most courts consider the "least sophisticated consumer" and the "unsophisticated consumer" tests to be alternative articulations of the same basic test. *See Jones*, 830 F.3d at 525 n.2; *Kalebaugh v. Berman & Rabin, P.A.*, 43 F. Supp. 3d 1215, 1220-21 (D. Kan. 2014). At least one federal circuit court of appeals, however, applies the "unsophisticated consumer" standard somewhat differently, holding that, under that standard, statements from a collection agency are not confusing or misleading unless a significant fraction of the population would be misled. *See, e.g., Chuway v. Nat'l Action Fin. Servs. Inc.*, 362 F.3d 944, 948-49 (7th Cir. 2004). At times, the district court here applied the "least

possess "a quotient of reasonableness and . . . a basic level of understanding." *Elyazidi v. SunTrust Bank*, 780 F.3d 227, 234 (4th Cir. 2015) (quoting *United States v. Nat'l Fin. Servs., Inc.*, 98 F.3d 131, 136 (4th Cir. 1996)); *see Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1027 (9th Cir. 2012) ("Most courts agree that although the least sophisticated debtor may be uninformed, naive, and gullible, nonetheless her interpretation of a collection notice cannot be bizarre or unreasonable."); *Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316, 317-18 (8th Cir. 2004) ("[T]he unsophisticated-consumer standard . . . contains an objective element of reasonableness to protect debt collectors from liability for peculiar interpretations of collection letters."); *see also Ellis*, 591 F.3d at 135 ("While protecting those consumers most susceptible to abusive debt collection practices, this Court has been careful not to conflate lack of sophistication with unreasonableness.").[7]

---

sophisticated consumer" standard by asking whether "a significant fraction of the population would be misled."

[7] Accordingly, some courts reference the standard in terms of an "unsophisticated, but reasonable, consumer." *Turner v. J.V.D.B. & Assocs., Inc.*, 330 F.3d 991, 995 (7th Cir. 2003); *see also Wallace v. Wash. Mut. Bank, F.A.*, 683 F.3d 323, 326-27 (6th Cir. 2012) (The

¶ 20    Ultimately, the question is "whether under the least sophisticated debtor standard, [the debt collector's] letter to [the debtor] 'can be reasonably read to have two different meanings, one of which is inaccurate.'" *Jensen v. Pressler & Pressler*, 791 F.3d 413, 418-20 (3d Cir. 2015) (quoting *Rosenau v. Unifund Corp.*, 539 F.3d 218, 223 (3d Cir. 2008)); *see Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 135 (2d Cir. 2017) (The issue is "'whether the *hypothetical* least sophisticated consumer could reasonably interpret' the representation in a way that is inaccurate." (quoting *Easterling v. Collecto, Inc.*, 692 F.3d 229, 234 (2d Cir. 2012))); *Dutton v. Wolhar*, 809 F. Supp. 1130, 1141 (D. Del. 1992) (The "least sophisticated debtor is not charged with gleaning the more subtle of the two interpretations" of a collection notice.).[8]

---

FDCPA is violated if "a statement would tend to mislead or confuse the reasonable unsophisticated consumer.").

[8] Garrett contends that the district court misapplied the "least sophisticated consumer" standard.  She does not, however, explain how the court did so, other than to disagree with the court's conclusions.  Because, as set forth below, we analyze the issues here de novo, we need not further consider this "contention."

## 2.    *Standard of Review*

¶ 21    At oral argument, the parties agreed that we should review de novo the district court's determination of this issue.

¶ 22    Some federal authorities, however, view this determination as a question of fact, not law.  *See Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 395 (4th Cir. 2014) (noting a split in the circuits over whether the issue presents a question of fact or law).  But we treat the issue as one of law, subject to de novo review, for the following reasons:

- "The majority of courts that have considered the issue have held that the question of whether a validation notice is overshadowed or contradicted is a question of law appropriate for summary judgment."  *Hamilton v. Capio Partners, LLC*, 237 F. Supp. 3d 1109, 1113 (D. Colo. 2017).

- "[T]he interpretation of a debt collection letter, under the [FDCPA], does not involve any historical facts or other factual disputes that are the usual forage of juries."  *Gonzalez v. Kay*, 577 F.3d 600, 611 (5th Cir. 2009) (Jolly, J., dissenting).

- "[J]udges historically are capable of fairly applying objective standards to undisputed facts." *Id.*

- "[A] serious policy consideration is implicated here: the uniform application of a [state] statute. Debt collectors often send the same letter to thousands of consumers throughout the country. Judicial determination of the deceptiveness of such letters establishes precedent and provides predictability to the parties engaged in these transactions." *Id.*

- Treating it as a question of law is consistent with the way the supreme court analyzed the issues in *Flood.* *See* 176 P.3d at 772-76 (effectively applying a de novo standard of review).

### *3. Analysis*

¶ 23    Garrett contends that the format and content of Credit Bureau's notices overshadowed or contradicted the statutorily required disclosures made by Credit Bureau. In support of this contention, she asserts numerous grounds. We are persuaded by one of them.

¶ 24    In *Flood*, the supreme court noted that the provisions now found in section 5-16-109(1) and (2)

> confer upon the recipient of a debt collection communication the right to obtain from the debt collection agency proof that he or she actually incurred the debt or suffered the judgment upon which the collection effort is based. This important right guards against such problems as identity theft, sending a debt collection communication to a person who has the same name as the debtor but is not that person, seeking an amount of payment that exceeds the debt owed, and seeking collection of a debt that has already been paid.

176 P.3d at 774. Crucially, the supreme court added:

> However, the recipient of the communication loses the right to require that the collection agency provide this information if he or she fails to dispute the debt, or any portion thereof, *in writing* within thirty days of receipt of the collection agency's communication.

*Id.*

¶ 25    Garrett asserts that Credit Bureau's second notice would have created confusion in the mind of the least sophisticated consumer with respect to the consumer's obligation to dispute a debt in writing within the requisite thirty-day period. This confusion, she asserts, is caused by the inclusion in the second notice of

capitalized and bolded language in a larger font than the rest of the notice stating, "**WE CANNOT HELP YOU UNLESS YOU CALL**."

¶ 26    The district court admirably — and, in our view, correctly — addressed a multitude of assertions made by Garrett.  But the court appears to have overlooked this particular assertion.  Consequently, it did not analyze whether the appearance and text of the above-mentioned, large, capitalized, and bolded language was capable of being reasonably interpreted by the least sophisticated consumer in two different ways, one of which would be inaccurate.

¶ 27    Certainly, there is nothing in the text of the quoted statement that would necessarily contradict the notice of rights (and obligations) provided to Garrett two and a half weeks earlier.  But Credit Bureau's second notice — which arrived within the thirty-day window — does not reference those rights and obligations in any fashion.  And it says, in larger font, with capitalized and bolded lettering, "**WE CANNOT HELP YOU UNLESS YOU CALL**."

¶ 28    In *Flood*, the supreme court recognized that the CFDCPA does not penalize or prohibit a collection agency from inviting oral communication from a consumer.  176 P.3d at 776.  But, in our view, the above-quoted language did more than simply invite oral

communication. The statement is directed at a particular audience, i.e., "You" (the consumer); the use of the forceful words "cannot" and "unless" conveys to a reader a strong sense of limitation — indeed, an inability to do anything on the consumer's behalf except on the condition that the consumer calls.[9] The statement, read as a whole, carries with it the implication that "we can only help you if you call."

¶ 29 At oral argument, Credit Bureau asserted that the least sophisticated consumer would apply the word "help" only to the means by which to resolve or pay a debt. But, in our view, the least sophisticated consumer could also (and, indeed, would most likely) apply the word "help" to encompass the means by which to avoid the debt in whole or in part — something that, by statute, could not be accomplished via a phone call, but could only be accomplished in writing, and within thirty days of the initial communication. To this extent, the second notice conveyed the same "[p]ick up the

---

[9] "'Cannot' connotes, not unwillingness, but inability." *Di Bennedetto v. Di Rocco*, 93 A.2d 474, 475 (Pa. 1953). Also, "[t]he 'unless' clause . . . 'implies a condition, the non-happening of which prevents a right from arising.'" *P. V. v. L. W.*, 603 P.2d 316, 318 (N.M. Ct. App. 1980) (quoting *In re Wiegand*, 27 F. Supp. 725, 729 (S.D. Cal. 1939)).

phone and let's talk, you really don't need to write" tone as was found improper in *Flood*. *See* 176 P.3d at 776.

¶ 30    Because, in our view, Credit Bureau's "**WE CANNOT HELP YOU UNLESS YOU CALL**" statement was capable of being reasonably interpreted by the least sophisticated consumer as changing the manner in which the consumer was required by law to dispute the debt or its amount, it was, as a matter of law, deceptive or misleading in violation of the CFDCPA.

## III.    Attorney Fees on Appeal

¶ 31    We reject Credit Bureau's request for appellate attorney fees. Credit Bureau makes the conclusory assertion that it is entitled to an award of attorney fees "under the CFDCPA" because Garrett's assertions on appeal are "spurious, without merit or support, and were brought for purposes of harassment." The manner in which we have resolved this appeal, however, belies this assertion.

¶ 32    Garrett, on the other hand, is entitled to an award of reasonable attorney fees incurred on appeal. *See* § 5-16-113, C.R.S. 2018; *Flood*, 176 P.3d at 777. Because the district court is better situated to make the necessary factual determinations related to the attorney fee request, we exercise our discretion under

C.A.R. 39.1 and direct the district court on remand to award Garrett her statutory damages, costs, and a reasonable amount of her attorney fees incurred on appeal.

## IV. Disposition

¶ 33 The judgment is reversed, and the matter is remanded with directions to enter judgment on the pleadings in favor of Garrett, and to award Garrett her statutory damages, costs, and reasonable attorney fees.

JUDGE LICHTENSTEIN and JUDGE ASHBY concur.