QUESTIONS PRESENTED AND CONCLUSIONS Question 1: Is the redemption of a winning Lottery ticket in excess of $599 by the Lottery a "service" under section 24-72.1-101, C.R.S. (2008)?
Answer 1: No. The redemption by the Lottery of a winning ticket in excess of $599 by the Lottery is not a "service."
Question 2: Is the license of a Lottery retailer a "state or local public benefit" under section 24-76.5-102(3), C.R.S. (2008)?
Answer 2: Yes. A Lottery retailer license is a "state or local public benefit."
Question 3: Must the Lottery verify the lawful presence of all persons who apply for a Lottery retailer license?
Answer 3: No. The Lottery must verify the lawful presence only of those applicants who are natural persons over eighteen years of age. *Page 2 
 DISCUSSION Question 1
In 1980, Colorado voters amended the Colorado Constitution to authorize the establishment of a state-operated lottery. Colo. Const. art. XVIII, § 7. The amendment originally provided that the net proceeds from the sale of lottery tickets would be allocated to the conservation trust fund for park, recreation, and open space purposes, except as otherwise provided by law. In re Great Outdoors Colorado Trust Fund, 913 P.2d 533, 536
(Colo. 1996). In 1992, the voters amended Article XVIII to allocate the net proceeds, up to a certain limit, to the Great Outdoors Colorado Trust Fund. Id.
The General Assembly established the Lottery in 1982. Section24-35-202(1) (a), C.R.S. (2008). The Lottery includes a Commission. Section 24-35-207(1), C.R.S. (2008). The Commission has the "full and exclusive authority to promulgate rules related to the lottery." Section24-35-202(2), C.R.S. (2008); see also § 24-35-208 (1) (a), C.R.S. (2008) (Commission has the power "[t]o promulgate rules governing the establishment and operation of the lottery as it deems necessary to carry out the purpose of this part 2").
The Commission has enacted rules governing the redemption of Lottery tickets. Lottery tickets are bearer instruments. Rule 5.5 a, 1C.C.R. 206-1. The holder of a winning ticket in the amount of $150.00 or less may present the ticket to a Lottery retailer licensee for validation. The holder of a winning ticket in the amount of $151 to $599 may present the ticket to a Lottery retailer licensee which validates the ticket and pays any prize owed. Rule 5.9 a, 1C.C.R. 206-1. Prizes in excess of $599 must be claimed at a Lottery office. Rule 5.9 c, 1 C.C.R. 206-1.
Prior to the payment of any cash prize required by rule to be paid only at a Lottery office, the claimant must submit his social security or federal employer identification number, if applicable, to the Department of Revenue. The Department must compare the number with those numbers maintained by the Department of Human Services or the Judicial Department for purposes of the state lottery winnings offsets established in sections 26-13-118, C.R.S. (2008) and 16-18.5-106.5, C.R.S. (2008). If the number submitted by the claimant matches a number on the list submitted by Department of Human Services, the Lottery must suspend payment of the prize until the amount of the offset is finally determined and settled. Sections 24-35-212(5) (a) and-212.5, C.R.S. (2008).
Under the SVIDA, "a public entity that provides services shall not accept, rely upon, or utilize an identification document to provide services unless it is a secure and verifiable document." Section24-72.1-103(1), C.R.S. (2008). The Act defines a "public entity" as "an agency, department, board, division, bureau, commission, council, or political subdivision of the state." Section 24-72.1-102(3), C.R.S. (2008). The Lottery is a public entity under the SVIDA.
The SVIDA does not define the word "services"; therefore, it must be given its ordinary meaning. Clynecke v. Waneka, 157 P.3d 1072, 1077
(Colo. 2007). Words will not be *Page 3 
interpreted in a manner that leads to an absurd result or is inconsistent with the intent of the statute. Flood v. Mercantile Adjustment BureauLLC, 176 P.3d 769, 772 (Colo. 2008).
The ordinary meaning of "service" in this context is "the action of helping or doing work for someone:. . .an act of assistance." New OxfordAmerican Dictionary at 1558. This explains why sales and redemptions of lottery tickets have never been understood to be a government service or otherwise covered by the SVIDA. The Lottery provides a product — a ticket with some chance of winning — that is purchased for full consideration by any person over eighteen, other than Lottery employees, officials and contractors. Interpreting such arms-length exchanges between a government enterprise and the general public to be a "governmental service" would not fit with the typical understanding of government "services."
The question is whether the presentation of identification for the purpose of redeeming tickets with a prize of more than $599 changes this analysis. I conclude that it does not.
As described above, the identification requirement for large redemptions is not imposed for the purpose of providing government assistance to the claimant. Instead, the Lottery statute and rules mandate that the Lottery must process such claims to assure that the claimant is not awarded a prize in a state-run game of chance while owing money to the Department of Human Services, to the claimant's children, or to the Judicial Department. The requirement is more akin to a collection function than to a service. If the Lottery is performing a "service," as that term is commonly understood, it would be to those persons or entities to whom money is owed and not to the person redeeming the ticket, who stands only to have his winnings reduced.
The redemption of tickets valued in excess of $599 is not a "service" under the SVIDA. Therefore, the SVIDA does not require the Lottery to accept, rely upon, or utilize a secure and verifiable document to process the claim.
 Question 2
The Lottery also asks whether the license granted to Lottery retailers is a commercial license, and thereby a "state or local public benefit" under section 24-76.5-102(3), C.R.S. (2008).
The Lottery issues licenses to qualified "persons, firms, associations, or corporations, profit or nonprofit" for the purpose of selling Lottery tickets. Section 24-35-206 (4), C.R.S. (2008). Only the Lottery and licensed retailers may sell Lottery tickets. Section 24-35-214
(1) (b), C.R.S. (2008). Licensees must "actively promote the sale of Colorado Lottery products and make them available for sale at all times the system is available and at the times that are consistent with the business hours of operation." Rule 2.4 b, 1 C.C.R. 206-1.
In 2006, the General Assembly enacted the Restriction on Public Benefits Act. The RPBA declares, "It is the public policy of the state of Colorado that all persons eighteen years *Page 4 
of age or older shall provide proof that they are lawfully present in the United States prior to receipt of certain public benefits." Section24-76.5-101, C.R.S. (2008). In general, each state agency must "verify the lawful presence in the United States of each natural person eighteen years of age or older who applies for state or local public benefits or for federal benefits for the applicant." Section 24-76.5-103 (1), C.R.S. (2008).
State law incorporates the federal definition of "state or local public benefits." Section 24-76.5-102 (3), C.R.S. (2008). Federal law defines "state or local public benefits" as "any grant, contract, loan, professional license, or commercial license provided by an agency of a State or local government or by appropriated funds of a State or local government." 8 U.S.C. § 1621(c). Neither federal nor state laws provide a definition of "commercial license."
There is no doubt that the authorization to sell lottery tickets is a "license." "License" is defined to include "the whole or any part of any agency permit, certificate, registration, charter, membership, or statutory exemption." Section 24-4-102 (7), C.R.S. (2008).
The more difficult question is whether the sale of lottery tickets is "commercial." It has not been defined in Colorado law, but Black's LawDictionary defines "commerce" as the "exchange of goods and services, esp. on a large scale involving transportation between cities, states and nations." Black's Law Dictionary 285 (8th ed. 2004).
Further, because the term "commercial license" is part of federal law, reference to federal court interpretations is appropriate. The United States Supreme Court addressed the transport of lottery tickets and the term "commerce" in The Lottery Case (Champion v. Ames), 188 U.S. 321,23 S. Ct. 321, 47 L. Ed. 492 (1903). There, the defendant was charged with conspiracy to transport lottery tickets across state lines. He claimed that the transport of lottery tickets from one state to another by an express company engaged in carrying packages from state to state did not constitute commerce and could not be regulated by the federal government. To resolve the dispute, the Court first defined "commerce" to include both traffic and commercial intercourse. Id. 188 U.S. at 323,23 S. Ct. at 346. The Court concluded that "lottery tickets are subjects of traffic and therefore are subjects of commerce." Id. 188 U.S. at 326,23 S. Ct. at 354; see also, Pic-A-State Pa, Inc. v. Reno, 76 F.3d 1294
(3rd Cir. 1996) (state lotteries affect interstate commerce).
In KTSP-Taft Television and Radio Company v. Arizona State LotteryCommission, 646 F. Supp. 300 (D. Ariz. 1986), a television broadcaster sought a preliminary injunction against the Arizona Lottery, alleging that the Lottery's policy limiting the broadcast of certain lottery drawings violated its First Amendment rights. In order to analyze the First Amendment claim, the Court first was required to characterize the nature of the Arizona Lottery. It concluded:
 Arizona's citizens have directed, through their ballots, that the state enter into competition for the wagering-entertainment-discretionary dollar of the public. In short, the state's voters *Page 5 
have directed that the state enter into the commercial marketplace of amusement and entertainment.
Id. at 312 (emphasis added).
Two cases conclude that a state-run lottery is not engaged in a typical commercial transaction. In In re Circle K Corp., 98 F.3d 484 (9th Cir. 1996), the issue was whether an Arizona lottery retailer in bankruptcy owed money on two percent of the total sales of lottery tickets or two percent of the bankrupt's commission on lottery sales. In deciding that the bankrupt retailer owed two percent of its commission on lottery sales, the Ninth Circuit discussed the nature of the Arizona Lottery. It noted that "state-sponsored lottery ticket sales fall into a class by themselves. They are quite unlike the general run of commercial operations mentioned in the lease." Id. at 486. Thus, "[i]n the hands of the State, lottery proceeds are used for various public purposes in the manner of tax revenues," and the lottery retailer "acts more as a tax collector for the State than as a retailer." Id., see also Hartig DrugCompany v. Hartig, 602 N.W.2d 794, 798 (Iowa. 1999) ("Unlike the typical commercial transaction in a retail business, a business which sells lottery tickets is simply a licensee of the state.").
In Colorado, the Lottery is both a state agency and a government-owned business. Section 24-35-202(1) (b), C.R.S. (2008). Although the Lottery is a state agency and is protected by the Governmental Immunity Act,Robinson v. Colorado State Lottery Division, 179 P.3d 998, 1004 (Colo. 2008), it also has business attributes. Cf. Nicholl v. E-470 PublicHighway Authority, 896 P.2d 859, 868-69 (Colo. 1995) (discussing the business and governmental nature of a highway authority). It finances its operations by charging a fee for a product. It is designed to generate a profit, which funds the Great Outdoors Colorado program. The licensees are selected primarily for their business acumen. Each licensee must demonstrate financial responsibility, the accessibility of the place of business, the volume of expected sales, and the ability to represent the Lottery in a manner consistent with the security and integrity of the Lottery. Section 24-35-206 (1), C.R.S. (2008). The licensees promote the sale of Lottery tickets.[1] Rule 2.4 b.
Given their duties and responsibilities, Lottery sales agents are more than revenue collectors. They are engaging in commerce through a commercial license issued by the Lottery. As such, their licenses are "commercial licenses" under state and federal law.
 Question 3
The third question presented is whether the Lottery must verify the lawful presence of every applicant for a Lottery retailer license. *Page 6 
Licensed retailers include "persons, firms, associations, or corporations, profit or nonprofit." Section 24-35-206(4), C.R.S. (2008). The RPBA states that state agencies "shall verify the lawful presence in the United States of each natural person eighteen years of age or older who applies for state or local benefits." Section 24-76.5-103(1), C.R.S. (2008). The Lottery must verify residency status of natural persons who apply for a Lottery retailer license. It is not required to verify the lawful presence of applicants (or their officers or directors) that are not natural persons.
 SUMMARY
The redemption of Lottery tickets in excess of $599 by the Lottery is not a "service" under section 24-72.3-101; therefore, the presentment of a secure and verifiable document is not required. A Lottery retailer license qualifies as "a state or local benefit" under the RPBA. Thus, under the RPBA, the Lottery must determine the lawful presence of applicants for Lottery retailer licenses who are natural persons eighteen years of age and older.
[1] Even though Lottery retailer licenses are commercial licenses for purposes of the RPBA, Lottery retailers are not liable for monetary damages or otherwise for the sale of lottery tickets that comply with applicable statutes, rules and directives. Section 24-35-222, C.R.S. (2008).