# United States Court of Appeals
## For the First Circuit

No. 13-2090

THOMAS W. VANDER LUITGAREN,

Plaintiff, Appellant,

v.

SUN LIFE ASSURANCE COMPANY OF CANADA,

Defendant, Appellee,

SUN LIFE ASSURANCE COMPANY OF CANADA (US)
AND SUN LIFE FINANCIAL, INC.,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor, IV, U.S. District Judge]

Before

Torruella and Selya, Circuit Judges,
and McAuliffe,* District Judge.

Stuart T. Rossman, with whom Arielle Cohen, The National
Consumer Law Center, John C. Bell, Jr., Lee W. Brigham, Bell &
Brigham, M. Scott Barrett, and BarrettWylie LLC were on brief, for
appellant.
Byrne J. Decker, with whom Catherine R. Connors, Gavin G.
McCarthy, and Pierce Atwood LLP were on brief, for appellee.

August 26, 2014

*Of the District of New Hampshire, sitting by designation.

**SELYA, <u>Circuit Judge</u>.** Our system of justice is precedent-based. Once we have decided a legal question and articulated our reasoning, there is usually no need for us to repastinate the same soil when another case presents essentially the same legal question.[1] So it is here.

In <u>Merrimon</u> v. <u>Unum Life Insurance Co.</u>, ___ F.3d ___ (1st Cir. 2014) [Nos. 13-2128, 13-2168, slip op.], we recently held that an insurer, acting in the place and stead of a plan administrator, properly discharges its duties under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461, when it pays a death benefit by establishing a retained asset account (RAA) as long as that method of payment is called for by the terms of the particular employee welfare benefit plan. <u>See</u> <u>id.</u> at ___ [slip op. at 20, 24]. This case and <u>Merrimon</u> are fair congeners; and for the most part, this case can be decided on the basis of our opinion in <u>Merrimon</u>. We write separately only to cover points not squarely addressed in <u>Merrimon</u>.

To assure the reader that this case and <u>Merrimon</u> are cut from the same cloth, we briefly sketch the largely undisputed facts. Plaintiff-appellant Thomas Vander Luitgaren is the beneficiary of an employee welfare benefit plan (the Plan) sponsored by his late brother's employer. The employer funded the

---

[1] There are, of course, exceptions to this "law of the circuit" rule. <u>See</u> <u>San Juan Cable LLC</u> v. <u>P.R. Tel. Co.</u>, 612 F.3d 25, 33 (1st Cir. 2010). No such exception pertains here.

Plan by arranging with defendant-appellee Sun Life Assurance Company of Canada for group life insurance. The employer, as the Plan administrator, delegated authority to Sun Life to make claim determinations.

Following his brother's demise, the appellant submitted a claim for death benefits to Sun Life, which promptly approved the claim and paid the death benefit. Its method of payment lies at the heart of this case: through a contractor, Sun Life established an RAA at State Street Bank; credited the full amount of the death benefit ($151,000) to that account; and mailed the appellant a book of drafts that he could use to withdraw the credited funds.

The RAA funds earned interest for the appellant at a rate of two percent per annum — an interest rate set by Sun Life.[2] As long as the funds remained unliquidated, Sun Life kept them in its general account and invested them to its own behoof.

As in Merrimon, it is uncontroverted that the appellant had the right to withdraw all or any part of his RAA funds at any time or times; provided, however, that no withdrawal could be for less than $250. Sun Life retained the right to close the RAA if the balance dipped below $250. In that event, it was obligated to remit the balance to the appellant.

_____

[2] Although Sun Life retained the right to adjust the rate prospectively, the record does not indicate that any interest rate adjustment was made during the period with which we are concerned.

-3-

The appellant's RAA proved fleeting: within a matter of days, the appellant withdrew the full $151,000. Sun Life then closed the account and mailed the appellant a check for the interest earned: $74.48.

That was not the end of the matter. The appellant sued Sun Life in the United States District Court for the District of Massachusetts. This suit, filed on behalf of the appellant and a putative class of similarly situated beneficiaries, alleged that Sun Life's use of RAAs as a method for paying death benefits transgressed its ERISA-inspired fiduciary duties in two ways. First, this method was said to constitute self-dealing in plan assets in violation of ERISA section 406(b). See 29 U.S.C. § 1106(b). Second, this method was said to contravene Sun Life's obligation under ERISA section 404(a) to act "solely in the interest of the participants and beneficiaries." Id. § 1104(a)(1). These are essentially the same claims advanced, on strikingly similar facts, by the Merrimon plaintiffs. See Merrimon, ___ F.3d at ___ [slip op. at 4-6].

In due course, the parties cross-moved for summary judgment. On November 19, 2012, the district court granted partial summary judgment in Sun Life's favor on the section 406(b) claim. See Vander Luitgaren v. Sun Life Assurance Co. (Vander Luitgaren I), 966 F. Supp. 2d 59, 68-69 (D. Mass. 2012). The court reasoned that the assets backing the appellant's RAA were not plan assets

-4-

and, thus, Sun Life was not dealing with plan assets when it retained and invested the RAA funds. See id. But the court withheld summary judgment on the section 404(a) claim, suggesting that "[f]urther factual development [was] necessary." Id. at 71.

While the litigation was continuing, the Third Circuit rejected a nearly identical claim. See Edmonson v. Lincoln Nat'l Life Ins. Co., 725 F.3d 406, 423-24 (3d Cir. 2013), cert. denied, 134 S. Ct. 2291 (2014). At that point, the district court wisely revisited the matter and granted summary judgment in favor of Sun Life on the section 404(a) claim. See Vander Luitgaren v. Sun Life Assurance Co. (Vander Luitgaren II), No. 09-11410, 2013 WL 4058916, at *5 (D. Mass. Aug. 9, 2013). The court's order disposed of the last remaining claim, setting the stage for this timely appeal. We have jurisdiction under 28 U.S.C. § 1291.

Most of the issues raised by the appellant duplicate issues that were decided in Merrimon, and it would serve no useful purpose to retrace our steps. We therefore affirm substantially on the basis of Merrimon, limiting our further discussion to two issues that were not decided in Merrimon.

Sun Life mounts a challenge to the appellant's statutory standing. No comparable challenge was seasonably raised in Merrimon. See ___ F.3d at ___ [slip op. at 11 n.3].

Constitutional standing differs from statutory standing. Constitutional standing goes to the power of the court: the

-5-

question is whether the parties have presented the kind of case or controversy that the Constitution allows federal courts to hear. See Katz v. Pershing, LLC, 672 F.3d 64, 71, 75 (1st Cir. 2012). In contrast, statutory standing "is simply statutory interpretation: the question it asks is whether Congress has accorded this injured plaintiff the right to sue the defendant [under the particular statute] to redress his injury." Graden v. Conexant Sys. Inc., 496 F.3d 291, 295 (3d Cir. 2007) (emphasis in original).

As framed by Sun Life, the statutory standing inquiry here turns on whether the appellant "falls within the class of plaintiffs whom Congress has authorized to sue under" ERISA. Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377, 1387 & n.4 (2014); see Radha A. Pathak, Statutory Standing and the Tyranny of Labels, 62 Okla. L. Rev. 89, 94 (2009). The appellant purposes to sue under ERISA section 502(a)(3), which authorizes a "beneficiary" to sue to obtain "appropriate equitable relief" for certain ERISA violations. 29 U.S.C. § 1132(a)(3). Inasmuch as ERISA defines a beneficiary as "a person designated by a participant . . . who is or may become entitled to a benefit" under a benefit plan, id. § 1002(8), the appellant would, at first blush, appear to satisfy this definition.

But appearances can be deceiving, cf. Aesop, The Wolf in Sheep's Clothing (circa 550 B.C.), and Sun Life argues cleverly that because the appellant received the full amount of the death

benefit when that sum was credited to the RAA, he is no longer entitled to a benefit under the Plan. On this basis, Sun Life suggests that the appellant lacks standing to sue under the statute.

This suggestion need not detain us. Unlike constitutional standing, statutory standing is part and parcel of the merits of a particular claim. See Katz, 672 F.3d at 75. It follows that, in certain circumstances, we may bypass a statutory standing inquiry and resolve the dispute on the merits.[3] See United States v. Moloney (In re Price), 685 F.3d 1, 13 n.15 (1st Cir. 2012), cert. denied, 133 S. Ct. 1796 (2013); Nisselson v. Lernout, 469 F.3d 143, 151 (1st Cir. 2006). This is such a case. Accordingly, we take no view of whether the appellant has statutory standing at the threshold but, rather, dive directly into the merits. See Faber v. Metro. Life Ins. Co., 648 F.3d 98, 103 (2d Cir. 2011) (adopting this approach in a substantially similar case).

Merrimon, without more, resolves the appellant's section 406(b) claim. We held there that "the funds backing the plaintiffs' RAAs were not, and never became, plan assets," so that

---

[3] We need not decide whether, strictly speaking, questions of statutory standing are jurisdictional questions. That issue is complicated. Courts have sometimes treated statutory standing as jurisdictional, particularly in the ERISA context. See Pathak, supra, at 106 & n.81, 111 & n.105 (collecting cases). But the Supreme Court has recently cast doubt on that proposition. See Lexmark, 134 S. Ct. at 1387 n.4.

"there was no showing of self-dealing [in plan assets] sufficient to ground a section 406(b) claim." Merrimon, ___ F.3d at ___ [slip op. at 20]. We premised this holding on the principle that the assets of a policy-issuing insurer are not plan assets, see 29 U.S.C. § 1101(b)(2), and are not transformed into plan assets by the establishment of an RAA. See Merrimon, ___ F.3d at ___ [slip op. at 16, 18] (explaining that determining whether an item is a plan asset will often turn on "ordinary notions of property rights"). These conclusions apply unreservedly in the instant case.[4]

This leaves the appellant's section 404(a) claim. Section 404(a) directs generally that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). The appellant contends that when Sun Life paid him by establishing an RAA, its decision was not made solely for his benefit.

In Merrimon, we rejected a virtually identical contention. See ___ F.3d at ___ [slip op. at 21-22, 24]. We held that a life insurer's payment of death benefits by means of an RAA

_____

[4] The appellant may have preserved here an argument not preserved in Merrimon premised on the acknowledged status of the policy as a plan asset. See 29 U.S.C. § 1101(b)(2); see also Merrimon, ___ F.3d at ___ [slip op. at 19-20]. Assuming for argument's sake that this argument was preserved, it is essentially duplicative of the appellant's other arguments and wholly unpersuasive.

does not violate its ERISA-inspired fiduciary duties when the Plan promises payment in that manner. See id. at 23-24.

But this case may be distinct because here, unlike in Merrimon, the Plan did not state in haec verba that benefits would be paid by means of an RAA. In the circumstances of this case, however, this is a distinction without a difference.

The Plan at issue here states: "The Death Benefit may be payable by a method other than a lump sum. The available methods of payment will be based on the benefit options offered by Sun Life at the time of election." It is undisputed that, at the relevant time, the establishment of an RAA was among the payment options offered by Sun Life. See Vander Luitgaren I, 966 F. Supp. 2d at 68.

The district court correctly held that Sun Life did not violate any fiduciary duties owed to the appellant when it chose to pay benefits through an RAA. See Vander Luitgaren II, 2013 WL 4058916, at *4; see also Edmonson, 725 F.3d at 422. After all, plan sponsors have "considerable latitude" to set the terms of a plan, including terms that spell out how benefits are to be paid. Merrimon, ___ F.3d at ___ [slip op. at 23]. The Supreme Court has explained that "ERISA's principal function [is] to protect [those] contractually defined benefits." US Airways, Inc. v. McCutchen, 133 S. Ct. 1537, 1548 (2013) (internal quotation marks omitted). Consequently, a fiduciary "must act in accordance with the

documents and instruments governing the plan insofar as they accord with the statute." Id. (internal quotation marks omitted).

These principles are controlling here. Since payment through an RAA is not per se prohibited by the statute, see Edmonson, 725 F.3d at 423-24, our inquiry necessarily focuses on the terms of the Plan. The Plan promises a guaranteed benefit to the appellant and specifies that the benefit may be paid other than by means of a lump sum.

This specification has got to mean something. The appellant urges us to read it as providing for payment by a mode other than lump sum only as long as the choice of an alternative does not benefit Sun Life. But nothing in the Plan language suggests so curious a restriction, and we therefore reject the appellant's embellishment.

In our view, a better reading of the phrasing is that Sun Life can discharge its obligations to the beneficiary by paying the promised benefit through any one of a range of recognized payment modalities; provided, however, that the chosen modality does not unfairly diminish, impair, restrict, or burden the beneficiary's rights. The focus, we think, is on how the method of payment affects the beneficiary — not on how it affects the insurer. So viewed, Sun Life's choice to pay the appellant through the medium of an RAA was a permissible step that comported with the Plan terms. See id.

The short of it is that, in the circumstances presented here, Sun Life's choice to pay by means of an RAA did not violate its fiduciary duties. See id. This result is entirely consistent with Merrimon. There, we found that the insurer was free to pay the death benefit by means of an RAA when that was the method of payment specified in the plan documents. See Merrimon, ___ F.3d at ___ [slip op. at 23-24]. We do not believe that a legally significant difference exists where, as here, the Plan documents, instead of singling out RAAs as the exclusive method of payment, allowed the insurer to pay other than by a lump sum.[5]

ERISA section 404(a) does not require a fiduciary to don the commercial equivalent of sackcloth and ashes. What it does require is that the fiduciary not place its own interests ahead of those of the Plan beneficiary. An example may help to illustrate the point. Suppose the Plan specifies that the death benefit may be paid other than in American dollars. If, in a particular case, it makes no practical difference to the beneficiary whether she receives her promised benefit in dollars or euros, but it is to the fiduciary's advantage to pay in euros, it could not rationally be argued that payment in euros was a breach of the fiduciary's duty

_____

[5] The result that we reach is also consistent with our decision in Mogel v. Unum Life Insurance Co., 547 F.3d 23 (1st Cir. 2008). There, the plan language specified that benefit payments would "be made in one lump sum," and we held the insurer to that language. See id. at 25-26; see also Merrimon, ___ F.3d at ___ [slip op. at 18] (discussing and distinguishing Mogel).

under section 404(a).  When the fiduciary's payment of a benefit does not unfairly diminish, impair, restrict, or burden the beneficiary's rights, section 404(a) is not transgressed.

Let us be perfectly clear.  Our decision turns on two important considerations: the language of the Plan and the fact that Sun Life gave the appellant immediate and unfettered access to the promised benefit in its entirety.  If either of those considerations were not present, this would be a different case.

We need go no further.  For the reasons elucidated above, the judgment of the district court is affirmed.

**Affirmed**.