# United States Court of Appeals
## For the First Circuit

No. 13-2478

ROBBIE POLLARD,

Plaintiff, Appellee,

v.

LAW OFFICE OF MANDY L. SPAULDING,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Richard G. Stearns, U.S. District Judge]

Before

Kayatta, Baldock[*] and Selya,
Circuit Judges.

Scott Douglas Burke, Tory A. Weigand, Alan E. Brown, and Morrison Mahoney LLP on brief for appellant.
Sergei Lemberg and Lemberg Law, LLC on brief for appellee.

September 8, 2014

---

[*]Of the Tenth Circuit, sitting by designation.

**SELYA, <u>Circuit Judge</u>.** This is one of the relatively rare occasions on which we have been asked, in a non-class-action setting, to visit the precincts patrolled by the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692-1692p. Specifically, we are tasked with determining whether a particular collection letter satisfies section 1692g(b) of the FDCPA, which requires that a debt collector's collection activities and communications "not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor." <u>Id.</u> § 1692g(b). The district court concluded that the collection letter at issue here fell short of this mark.

We hold that, for FDCPA purposes, a collection letter is to be viewed from the perspective of the hypothetical unsophisticated consumer. Applying this standard, we affirm the judgment below.

## I.  BACKGROUND

The raw facts, memorialized by the parties' pleadings, are undisputed. At some indeterminate point in time, plaintiff-appellee Robbie Pollard, who is a "consumer" within the meaning of 15 U.S.C. § 1692a(3), allegedly incurred a debt of approximately $611.84. The Law Office of Mandy L. Spaulding, the defendant and appellant here, subsequently was retained to collect the debt. In

carrying out this assignment, the defendant was operating as a "debt collector" as defined in section 1692a(6).

On October 23, 2012, the defendant sent the plaintiff a collection letter (a copy of which appears as an appendix to this opinion). This letter was typed on the defendant's letterhead over the signature "Mandy L. Spaulding, Esq." The letter explained that the defendant had been retained to collect the monies allegedly owed and was "not inclined to use further resources attempting to collect this debt before filing suit." It further explained that the defendant planned to collect the debt "through whatever legal means are available and without [the plaintiff's] cooperation." It went on to inform the plaintiff that the defendant was "obligated to [its] client to pursue the next logical course of action without delay" and described how the plaintiff could make payments.

Below the signature block, in smaller print, were several paragraphs preceded by the caption "NOTICE OF IMPORTANT RIGHTS." These paragraphs contained the statutorily mandated notice of consumer rights. See id. § 1692g(a)(3)-(5).

Following her receipt of this collection letter, the plaintiff contacted the defendant to dispute ownership of the debt and request validation. Approximately one month after the collection letter arrived, the plaintiff sued. In her complaint, she asserted that the defendant had violated sundry provisions of the FDCPA, including section 1692g. The defendant answered and,

several months later, moved for judgment on the pleadings.  <u>See</u> Fed. R. Civ. P. 12(c).  The district court concluded, among other things, that the collection letter violated section 1692g as a matter of law.[1]  <u>See</u> <u>Pollard</u> v. <u>Law Office of Mandy L. Spaulding</u>, 967 F. Supp. 2d 470, 477 (D. Mass. 2013).  The parties thereafter agreed upon the damages and attorneys' fees recoverable by the plaintiff.  A final judgment entered, which preserved the defendant's right to appeal from the ruling that the collection letter transgressed section 1692g.  This timely appeal followed.

## II.  ANALYSIS

Congress enacted the FDCPA to eliminate "the use of abusive, deceptive, and unfair debt collection practices."  15 U.S.C. § 1692(a).  The Act not only proscribes certain invidious methods of debt collection but also requires debt collectors to furnish to consumers a notice, commonly called a "validation notice," limning certain rights and information.  <u>See</u> <u>id.</u> § 1692g(a).  Among other things, a debt collector must inform the consumer that she has thirty days from receipt of the validation notice within which to dispute the debt before it is assumed to be valid and that if she disputes the debt, the debt collector will provide her with verification of the debt's validity.  <u>See</u> <u>id.</u> § 1692g(a)(3)-(4).  If the consumer either disputes the debt or

---

[1] At the same time, the court ruled on other issues.  Those rulings are immaterial here, and it would serve no useful purpose to chronicle them.

requests information concerning the identity of the original creditor within this thirty-day period, the debt collector must suspend collection efforts until it supplies such data.  See id. § 1692g(b).

Prior to 2006, the FDCPA did not expressly require that the validation notice convey the consumer's rights in a nonconfusing manner.  Courts nevertheless glossed the statute with such a requirement and routinely interpreted section 1692g to bar the use of collection letters that overshadow or contradict the validation notice.  See McMurray v. ProCollect, Inc., 687 F.3d 665, 668 n.1 (5th Cir. 2012).  The Financial Services Regulatory Relief Act of 2006 removed any lingering doubt on this score: it amended the FDCPA to make pellucid that "[a]ny collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor." See Pub. L. No. 109-351, § 802(c), 120 Stat. 1966, 2006-07 (codified at 15 U.S.C. § 1692g(b)).

Against this backdrop, we turn first to a late-blooming issue that implicates our subject-matter jurisdiction.  After clearing that hurdle, we address the defendant's other claims of error.

-5-

## A. Standing.

The defendant argues for the first time in its reply brief that the plaintiff lacks Article III standing. In most cases, an argument advanced so late in the day and in so perfunctory a fashion would be forfeit. See, e.g., Merrimon v. Unum Life Ins. Co., ___ F.3d ___, ___ (1st Cir. 2014) [Nos. 13-2128, 13-2168, slip op. at 6]; McCoy v. Mass. Inst. of Tech., 950 F.2d 13, 22 (1st Cir. 1991). But there are exceptions to this general rule, and the defendant's lack of standing argument comes within such an exception. After all, whether a plaintiff has Article III standing implicates a federal court's subject-matter jurisdiction and, thus, must be resolved no matter how tardily the question is raised. See Merrimon, 755 F.3d at ___ [slip op. at 6-7]; see also Vander Luitgaren v. Sun Life Assurance Co., ___ F.3d ___, ___ (1st Cir. 2014) [No. 13-2090, slip op. at 5-7] (comparing constitutional and statutory standing). We turn to that task.

Federal courts are constitutionally empowered to adjudicate only actual cases and controversies. See U.S. Const. art. III, § 2; Hollingsworth v. Perry, 133 S. Ct. 2652, 2661 (2013). "A case or controversy exists only when the party soliciting federal court jurisdiction (normally, the plaintiff) demonstrates 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely

-6-

depends.'" Katz v. Pershing, LLC, 672 F.3d 64, 71 (1st Cir. 2012) (quoting Baker v. Carr, 369 U.S. 186, 204 (1962)). To demonstrate that she has standing, "a plaintiff must establish each part of a familiar triad: injury, causation, and redressability." Id. (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).

The defendant suggests that the plaintiff lacks a constitutionally cognizable injury because she was not flummoxed about her statutory rights after reading the collection letter, as evidenced by the fact that she exercised those rights. But this suggestion gives too short shrift to the well-settled proposition that "[t]he . . . injury required by Art. III may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing.'" Warth v. Seldin, 422 U.S. 490, 500 (1975) (quoting Linda R.S. v. Richard D., 410 U.S. 614, 617 n.3 (1973)); see Lujan, 504 U.S. at 578; Havens Realty Corp. v. Coleman, 455 U.S. 363, 373 (1982).

In cases in which a plaintiff's injury stems solely from the violation of a statute, the nature of the right that the statute confers is of paramount concern. See Warth, 422 U.S. at 500; Merrimon, ___ F.3d at ___ [slip op. at 9]; Tourgeman v. Collins Fin. Servs., Inc., 755 F.3d 1109, ___ (9th Cir. 2014) [slip op. at 8-9]. This principle is leavened by the corollary principle that Congress cannot confer standing beyond the boundaries of

-7-

Article III, that is, upon individuals who have not suffered a concrete injury. See Summers v. Earth Island Inst., 555 U.S. 488, 497 (2009). As a result, a plaintiff always must be able to demonstrate that she suffered some "personal and tangible harm." Hollingsworth, 133 S. Ct. at 2661.

Section 1692g prohibits debt collectors from sending collection letters that overshadow or are otherwise inconsistent with the required validation notice. Debt collectors who transgress that prohibition are liable to consumers for actual and statutory damages. See 15 U.S.C. § 1692k. Refined to bare essence, the FDCPA bestows upon consumers a right not to receive communications that overshadow or are inconsistent with the validation notice. Cf. Tourgeman, 755 F.3d at ___ [slip op. at 6, 9, 12] (characterizing analogous right conferred by section 1692e as the right not to be the target of misleading communications).

The invasion of a statutorily conferred right may, in and of itself, be a sufficient injury to undergird a plaintiff's standing even in the absence of other harm. See Havens, 455 U.S. at 373-74 (holding that plaintiff suffered cognizable injury when defendant violated statutory right to truthful housing information, notwithstanding plaintiff's lack of any intention to rent or purchase home). That is the case here: the FDCPA does not require that a plaintiff actually be confused. See Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85, 91 (2d Cir. 2008). Seen in this

-8-

light, the absence of confusion is irrelevant to the standing inquiry.

The short of it is that the plaintiff adequately alleged that her personal right was violated when she received the collection letter. That comprised an injury attributable to the defendant's actions — an injury that will be redressed by an award of damages. No more is exigible to confirm the plaintiff's Article III standing.

## B. **The Merits**.

The defendant protests that its collection letter neither overshadows nor contradicts the validation notice.[2] The district court thought otherwise, and we review that court's entry of

---

[2] Although section 1692g refers to "inconsistencies," the case law typically refers to "contradictions." Because the 2006 amendments to the FDCPA codified existing case law, courts tend to treat those terms interchangeably. See McMurray, 687 F.3d at 669 n.2. We follow this praxis.

judgment on the pleadings de novo.[3] <u>Mass. Nurses Ass'n</u> v. <u>N. Adams Reg'l Hosp.</u>, 467 F.3d 27, 31 (1st Cir. 2006).

This court has not previously had the occasion to consider from whose perspective a collection letter should be viewed for FDCPA purposes. In confronting this question, we are not navigating uncharted waters. Two of our sister circuits have addressed this issue and concluded that a collection letter is to be viewed from the perspective of the hypothetical unsophisticated consumer.[4] <u>See</u> <u>Peters</u> v. <u>Gen. Serv. Bureau, Inc.</u>, 277 F.3d 1051,

---

[3] The parties agree, so we assume for present purposes (without deciding), that whether a collection letter overshadows or is inconsistent with a validation notice is a question of law. However, there is no consensus on this point. While the weight of authority holds that the question of whether a collection letter overshadows or is inconsistent with a validation notice is one of law, <u>see</u>, <u>e.g.</u>, <u>Fed. Home Loan Mortg. Corp.</u> v. <u>Lamar</u>, 503 F.3d 504, 508 n.2 (6th Cir. 2007); <u>Wilson</u> v. <u>Quadramed Corp.</u>, 225 F.3d 350, 353 n.2 (3d Cir. 2000), at least one court of appeals has concluded that such a question is one of fact to be resolved by a jury, <u>see</u> <u>Walker</u> v. <u>Nat'l Recovery, Inc.</u>, 200 F.3d 500, 503 (7th Cir. 1999). Neither party has addressed this split in authority, and we refrain from delving into the issue without the benefit of either briefing or developed argumentation.

[4] A majority of the circuits applies a "least sophisticated consumer" standard. <u>See</u>, <u>e.g.</u>, <u>Fed. Home Loan Mortg. Corp.</u> v. <u>Lamar</u>, 503 F.3d 504, 509 (6th Cir. 2007); <u>Terran</u> v. <u>Kaplan</u>, 109 F.3d 1428, 1431-32 (9th Cir. 1997); <u>Russell</u> v. <u>Equifax A.R.S.</u>, 74 F.3d 30, 34 (2d Cir. 1996); <u>cf.</u> <u>Chiang</u> v. <u>Verizon New Eng. Inc.</u>, 595 F.3d 26, 42 (1st Cir. 2010) (referencing, though having no occasion to adopt or apply, the least sophisticated consumer standard). Labels aside, there appears to be little difference between this formulation and the "unsophisticated consumer" formulation. <u>See</u> <u>Avila</u> v. <u>Rubin</u>, 84 F.3d 222, 227 (7th Cir. 1996) ("[T]he unsophisticated consumer standard is a distinction without much of a practical difference in application."). We adopt the unsophisticated consumer formulation to avoid any appearance of wedding the standard to the "very last rung on the sophistication

-10-

1055 (8th Cir. 2002); <u>Gammon</u> v. <u>GC Servs. Ltd. P'ship</u>, 27 F.3d 1254, 1257 (7th Cir. 1994). We think that this reading captures the spirit of the statute. Accordingly, we hold that, for FDCPA purposes, a collection letter is to be viewed from the perspective of the hypothetical unsophisticated consumer.

The standard protects "all consumers, including the inexperienced, the untrained and the credulous." <u>Taylor</u> v. <u>Perrin, Landry, deLaunay & Durand</u>, 103 F.3d 1232, 1236 (5th Cir. 1997); <u>see</u> <u>Clomon</u> v. <u>Jackson</u>, 988 F.2d 1314, 1318 (2d Cir. 1993). Even so, the standard remains an objective one, which preserves an element of reasonableness. A debt collector will not be held liable based on an individual consumer's chimerical or farfetched reading of a collection letter. <u>See</u> <u>Taylor</u>, 103 F.3d at 1236.

With this holding in place, we turn to the question of whether the collection letter sent by the defendant, when viewed through the eyes of the unsophisticated consumer, overshadows or is inconsistent with the validation notice. We note at the outset that, in the section 1692g milieu, courts do not always distinguish between violations based on the overshadowing of a validation notice and violations based on inconsistencies. Overshadowing is a phenomenon that can take diverse forms. Typically, however, overshadowing is based upon the visual characteristics of a

_____

ladder." <u>Gammon</u> v. <u>GC Servs. Ltd. P'Ship</u>, 27 F.3d 1254, 1257 (7th Cir. 1994).

-11-

collection letter, such as when a letter demands payment in large, attention-grabbing type and relegates the validation notice to fine or otherwise hard-to-read print.  See McMurray, 687 F.3d at 671; Bartlett v. Heibl, 128 F.3d 497, 500 (7th Cir. 1997).

Inconsistencies, too, can occur in various shapes and sizes.  They may be either literal or apparent.  See, e.g., Peter v. GC Servs. L.P., 310 F.3d 344, 349 (5th Cir. 2002); Bartlett, 128 F.3d at 500-01.  Most frequently, material inconsistencies arise when a collection letter demands immediate payment or payment in a definite period shorter than thirty days.  See, e.g., McMurray, 687 F.3d at 670; Peter, 310 F.3d at 349.

Whether the controversy centers on overshadowing or inconsistency, the inquiry reduces to whether a particular collection letter would confuse the unsophisticated consumer.  See Bartlett, 128 F.3d at 500-01.  This inquiry is to be conducted with a recognition that confusion can occur in a myriad of ways, such as when a letter visually buries the required validation notice, contains logical inconsistencies, fails to explain an apparent inconsistency, or presents some combination of these (or similar) vices.  See id.  In the last analysis, a collection letter is confusing if, after reading it, the unsophisticated consumer would be left unsure of her right to dispute the debt and request information concerning the original creditor.  See Russell v. Equifax A.R.S., 74 F.3d 30, 35 (2d Cir. 1996).  The emphasis, then,

is on practical effect.  See Graziano v. Harrison, 950 F.2d 107, 111 (3d Cir. 1991) (explaining that "statutory notice must not only explicate a debtor's rights; it must do so effectively").

In conducting the requisite inquiry, we examine the entire collection letter.  See Peter, 310 F.3d at 349; McStay v. I.C. Sys., Inc., 308 F.3d 188, 191 (2d Cir. 2002).  Doing so, we conclude — as did the court below — that the collection letter in this case is confusing.  The letter conveys the message that the defendant is not inclined to do anything other than file a lawsuit and that it plans to pursue such a course of action "without delay."  At bottom, the letter seems to threaten immediate litigation.  We think that, implicit in this threat, is the idea that litigation can be avoided only if payment is made forthwith. That idea is reinforced by the fact that the letter appears on law firm letterhead and bears the signature of an attorney.

To be sure, the letter does contain the required section 1692g(a) disclosures, including a statement that the consumer may dispute the debt in writing within thirty days.  While Congress for some reason did not require that the notice actually explain what the effect of disputing a debt would be (putting the brakes on collection efforts until a proper response is sent by the debt collector, see 15 U.S.C. § 1692g(b)), we have no doubt that a debt collector is not allowed to suggest that the effect of disputing a debt is different than what the FDCPA provides.  To give the

required notice of a right to dispute the debt while simultaneously and inaccurately disparaging the benefit of the right is to cause the consumer to think that the right to dispute has less benefit than is actually the case.

Here, this is precisely what the unsophisticated consumer would read the letter as doing. The letter clearly and repeatedly implies that debt collection actions are going to proceed forthwith, come what may. Of utmost significance in this regard is the notice of rights itself. Although the notice is arguably legible, it nonetheless contributes greatly to the incipient confusion. Critically, the second sentence of the second paragraph of the notice reads "we further inform you that despite the fact that you have a thirty (30) day period to dispute the debt may not preclude [sic] the filing of legal action against you prior to the expiration of the period."[5] With its hopelessly scrambled syntax, this sentence is easily read as suggesting that a lawsuit is going to proceed without delay whether the consumer disputes the debt or not. The other affirmative statements in the text of the letter to

---

[5] Our dissenting brother makes the point that this sentence is garbled because of what he regards as a typographical error. But the source of the garbling is irrelevant to our inquiry. It is the unsophisticated consumer's perception of the letter, not the debt collector's intent, that controls a determination of whether a collection letter overshadows or contradicts a validation notice. See Ellis v. Solomon & Solomon, P.C., 591 F.3d 130, 135 (2d Cir. 2010) ("To recover damages under the FDCPA, a consumer does not need to show intentional conduct on the part of the debt collector.").

the effect that the writer is "not inclined to use further resources attempting to collect this debt before filing suit" and is going to "pursue the next logical course of action without delay" reinforce this reading.

In this manner, the letter effectively overshadows the disclosed right to dispute by conveying an inaccurate message that exercise of the right does not have an effect that the statute itself says it has. We believe that when Congress required a debt collector to give notice of this right and provided that conduct overshadowing the disclosure of such right shall not be undertaken, it prohibited conduct such as this — conduct that would dupe the unsophisticated consumer into believing that disputing a debt could not forestall a suit.

The defendant vigorously resists the conclusion that its collection letter is confusing. We have examined the defendant's arguments and find them wanting.

To begin, the defendant points out that the thirty-day validation period is not a grace period. This is true as far as it goes, but it does not get the defendant very far. The FDCPA makes plain that a debt collector's right to seek payment coexists with a consumer's right to notice. See 15 U.S.C. § 1692g(b) (stating that "[c]ollection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period" unless the consumer exercises her validation rights). The

-15-

coexistence of these rights "create[s] a breeding ground for claims for unsophisticated-debtor confusion" because consumers are often faced with two seemingly contradictory statements: that they may dispute the debt and that they must pay immediately. Durkin v. Equifax Check Servs., Inc., 406 F.3d 410, 416 (7th Cir. 2005).

But the FDCPA pairs a debt collector's right to pursue payment with a corresponding obligation to ensure that its communications are not confusing. Consequently, when undertaking collection, a debt collector bears the burden of apprising the consumer of her validation rights in an effective manner.

Next, the defendant asseverates that its collection letter is not confusing because it does not contain an express demand for payment within thirty days. In support of this asseveration, the defendant draws upon case law distinguishing between letters that demand payment immediately or within thirty days and letters that contain open-ended demands for payment. As we explain below, this sets up a false dichotomy.

Unexplained demands for payment immediately or within thirty days confuse the unsophisticated consumer because they contain an apparent contradiction that renders her unsure of her rights. See Peter, 310 F.3d at 349. Such collection letters can readily be distinguished from those that merely contain "puffery" (such as encouragement to a consumer to "act now") or that do no more than explain the consequences of a failure to pay. Letters of

-16-

this latter stripe normally are found not to be confusing. See, e.g., Zemeckis v. Global Credit & Collection Corp., 679 F.3d 632, 636 (7th Cir. 2012). So, too, open-ended collection letters that demand payment without reference to any temporal framework typically do not violate section 1692g. See, e.g., Peter, 310 F.3d at 349-50.

The distinction that the defendant envisions between these two lines of cases does not aid its cause. The collection letter in this case bears more of a resemblance to a demand for immediate payment than to mere open-ended puffery. Although the letter does not demand immediate payment in haec verba, it not so subtly threatens immediate litigation and tells the plaintiff how to make payments. The clear implication is that the plaintiff can stave off suit only by ignoring her validation rights and making payment.

In any event, the defendant places undue weight on the perceived distinction between an express demand for immediate payment and anything short of that. Overshadowing is rarely a black-or-white proposition: there are many shades of gray. It is impossible to catalogue the manifold ways, some subtle and some not, in which a debt collector may attempt to circumnavigate section 1692g. See Russell, 74 F.3d at 35; Miller v. Payco-Gen. Am. Credits, Inc., 943 F.2d 482, 485 (4th Cir. 1991). Practical effect is what counts, and we are confident that this collection

letter — despite the fact that it does not contain an explicit demand for immediate payment — would confuse the unsophisticated consumer as to her rights.

The defendant also contends that the fact that this collection letter was sent by an attorney is irrelevant. In the defendant's view, the source of a letter has no bearing on the clarity of the validation notice. We do not agree.

We share the view of the Third Circuit that "[u]nder the [FDCPA], attorney debt collectors warrant closer scrutiny because their abusive collection practices are more egregious than those of lay collectors." Campuzano-Burgos v. Midland Credit Mgmt., Inc., 550 F.3d 294, 301 (3d Cir. 2008) (internal quotation marks omitted). Thus, "[a]n unsophisticated consumer, getting a letter from an attorney, knows the price of poker has just gone up." Avila, 84 F.3d at 229 (internal quotation marks omitted). An attorney's imprimatur conveys authority and induces a consumer to act more quickly. See id. With this in mind, it would be naive for a court to ignore the source of a collection letter. That the letter in this case was signed by an attorney reinforces the perception that it threatens immediate litigation.[6]

The defendant complains that the district court should not have faulted it for not including "transitional" language (that

_____

[6] Although the cases on which we rely for this conclusion involve claims under section 1692e, we think that the principles that they articulate have more general application.

-18-

is, language explaining the interface between its threat of suit and the plaintiff's rights) in its collection letter. It correctly points out that the FDCPA does not require any such language, and it laments that the court below gratuitously grafted this additional requirement onto the statute. This plaint contains more cry than wool.

A debt collector is, of course, free to demand immediate payment or (sometimes) even to file suit during the thirty-day validation period. But pursuing such a multi-directional course can lead to confusion,[7] and debt collectors remain firmly bound by the FDCPA's command not to overshadow or be inconsistent with the validation notice. See Ellis v. Solomon & Solomon, P.C., 591 F.3d 130, 136-37 (2d Cir. 2010). The simplest way for a debt collector to ensure that its payment demand does not create confusion is to provide a brief, lucid explanation of how collector and consumer rights interact during the validation period. Two courts of appeals have gone so far as to offer sample language. See Savino v. Computer Credit, Inc., 164 F.3d 81, 86 (2d Cir. 1998); Bartlett, 128 F.3d at 501-02.

Although the FDCPA does not require such an explanation, it does require that collection letters not be confusing. A debt

---

[7] One is reminded of the aphorist Stephen Butler Leacock's tale of a man who "flung himself upon his horse and rode madly off in all directions." Stephen Leacock, Gertrude the Governess: or, Simple Seventeen, in Nonsense Novels 71, 73 (John Lane 1920) (1911).

collector who chooses to brandish threats of litigation must take pains to ensure that those threats do not obnubilate or undercut the required validation notice. In evaluating whether a collection letter breeds confusion, a district court thus acts well within its proper province in noting that a debt collector could easily have included explanatory language but chose not to do so. So it is here.

Relatedly, the defendant argues that its collection letter contains language sufficient to dispel any confusion. To be specific, it argues that the second sentence of the second paragraph of its validation notice adequately explains the interaction between its right to initiate litigation and the plaintiff's validation rights. But as we already have explained, the sentence itself is unintelligible and, thus, obfuscates more than it clarifies. Moreover, the sentence only reinforces the defendant's intent to file suit forthwith, regardless of whether or not the plaintiff were to seek validation of the debt. That emphasis hardly advances the defendant's argument.

There is one final matter. Judge Baldock's dissent emphasizes that the information conveyed by the defendant's collection letter is true and posits that a mere typographical error should not result in a statutory violation. To buttress his point, Judge Baldock offers an explanation of how the letter can be read so that it does not violate section 1692g.

But it is not a federal judge's ability to parse a collection letter with which we are concerned. Instead, it is the ability of the unsophisticated consumer. Moreover, that the information is accurate does not render it nonconfusing as presented. See Bartlett, 128 F.3d at 500-01 (explaining that the failure to clarify an apparent contradiction is just as bad as an outright contradiction). That a debt collector may threaten litigation in a nonconfusing manner without violating section 1692g does not resolve this case. Absent the garbled sentence in the second paragraph of the validation notice, the letter here might well have satisfied section 1692g. However, when the garbled sentence is piled on top of the letter's compendium of threats, we continue to believe that the effect on the unsophisticated consumer would be to confuse.

## III. CONCLUSION

We need go no further. For the reasons elucidated above, the judgment of the district court is

**Affirmed.**

**- Dissenting Opinion Follows -**

**BALDOCK**, <u>Circuit Judge</u>, **dissenting**. As always, Judge Selya's prose is eloquent and his analysis thorough. Regrettably, I cannot join, as I do not believe this letter violated § 1692g.

Defendant's letter did not explicitly demand immediate payment or payment sooner than thirty days, and Defendant included Plaintiff's rights to dispute the debt and to request information on the front of the only page, in legible font. This much is undisputed and, in my view, should settle the debate as it distinguishes virtually all cases detailing § 1692g violations.[8] Nevertheless, this court finds a statutory breach.

The court, as I read it, initially reasons Defendant <u>implicitly</u> demanded immediate payment by expressing an intent to litigate immediately. But, the court later admits — as it must — that Defendant could indeed litigate immediately without violating § 1692g. <u>See</u> <u>Bartlett</u> v. <u>Heibl</u>, 128 F.3d 497, 501 (7th Cir. 1997) ("The debt collector is perfectly free to sue within thirty days."). Going further, Plaintiff herself confesses "[d]ebt collectors are <u>free to tell consumers</u> that, absent payment, the collector will file a lawsuit <u>without delay</u>." Resp. Br. at 5

---

[8] <u>Compare</u> <u>Miller</u> v. <u>Payco-Gen. Am. Credits, Inc.</u>, 943 F.2d 482, 483 (4th Cir. 1991) (violation: form stated "THIS IS A DEMAND FOR IMMEDIATE FULL PAYMENT" in large, red, and bold type, and "PAY US — NOW" with the "NOW" taking up a third of a page), <u>and</u> <u>Bartlett</u> v. <u>Heibl</u>, 128 F.3d 497, 503 (7th Cir. 1997) (violation: letter demanded payment or contact "within one week"), <u>with</u> <u>McMurray</u> v. <u>ProCollect, Inc.</u>, 687 F.3d 665, 670 (5th Cir. 2012) (<u>no</u> violation: "letter contain[ed] no demand for payment, much less a demand for payment within the 30-day statutory contest period").

(emphases added); see also Zemeckis v. Global Credit & Collection Corp., 679 F.3d 632, 636-37 (7th Cir. 2012) ("Global Credit's repeated threat of legal action . . . fails to convert the letter's puffery into a contradictory payment deadline."). So, if debt collectors are free to litigate immediately, and free to tell consumers they will litigate immediately sans payment, how is this letter improper? Plaintiff theorizes collectors "must use transitional or explanatory language" when they threaten prompt litigation, lest the threat negate the disclosure of Plaintiff's rights to dispute and to gather information. Yet the court (rightly) rejects this theory: "[T]he FDCPA," it writes, "does not require any such language." Apparently, a litigation threat and a disclosure of consumer rights can coexist absent explanation — so long as the letter does not otherwise confuse. So, aside from lawful litigation threats, how would this letter confuse?

The court gives two reasons. First, the court finds significant Defendant's use of law firm letterhead and a lawyer's signature. The statute does not mention this, however, and the court cites no case law directly on point, despite an abundance of existing § 1692g cases.[9] Second, the court opines that a sentence in the final paragraph of the validation notice is

_____

[9] The court believes § 1692e cases are applicable, but I am not convinced. Unlike § 1692g, several § 1692e claims explicitly discuss attorneys and the legal context. See, e.g., § 1692e(3) ("The false representation . . . that any communication is from an attorney [violates § 1692e].").

-23-

"unintelligible." I do not see it that way. The sentence in question has a single typo.[10] I am not inclined to find a statutory violation based on an insubstantial typo. More importantly, rather than confuse, the sentence merely lays out the same two propositions discussed above: (1) the consumer has "a thirty (30) day period to dispute the debt", which is true, and (2) Defendant may still file a lawsuit within this thirty-day window, which is also true. Put another way: The aspect of this letter most relied upon to hold a consumer would be confused about her right to dispute the debt is a sentence that reiterates a consumer has a right to dispute the debt. I fail to discern the problem.

In conclusion, the letter as a whole is relatively straightforward and does not "overshadow" or contradict the disclosure of consumer rights. Even an unsophisticated consumer would not be confused here. See Fed. Home Loan Mortg. Corp. v. Lamar, 503 F.3d 504, 510 (6th Cir. 2007) (least sophisticated consumer would read material "carefully" and "in its entirety").

I respectfully dissent.

---

[10] It appears plain to me Defendant simply forgot to delete the word "despite" from the sentence, perhaps after a revision.

**APPENDIX A**

## THE LAW OFFICE OF
## MANDY L. SPAULDING
P.O. Box 826 North Attleboro, MA 02761

www.mlspauldinglaw.com
Mandy L. Spaulding (Licensed in MA)
Nicholas M. Amaral (Licensed in MA and RI)

Telephone: (508) 643-7200
Facsimile: (508) 809-4634

October 23, 2012

Re:      File Number:      12912
            Original Creditor:      CONFIN FIRST BANK OF DELAW
            Original Account Number:      5126070001264952
            Amount:      $611.84

Dear Robbie Stefanowich:

I have been retained by Debt Management, Inc., successor in interest to and legal title holder of the above captioned debt. I have been asked by my client to collect from you the entire balance noted above that you owe on your delinquent account.

This is the first letter being sent to you by my office, following attempts by the original creditor and a collection agency to reach you to resolve this matter. I am not inclined to use further resources attempting to collect this debt before filing suit.

I have been retained to collect this debt through whatever legal means are available and without your cooperation, I am obligated to my client to pursue the next logical course of action without delay.

While payments can always be made by calling our office to set up payments via phone or mailing payments to the above address, you can also make payments via our website (above), or Money Gram which is a service available at your local Shaw's or Walmart. For a Money Gram payment you will need a six digit account number which is the File Number listed above followed by as many 0's needed to be six digits , and our receive code which is 6064.

Thank you for your cooperation in this matter.

Very truly yours,
*Mandy Spaulding*
Mandy L. Spaulding, Esq.
MS/ms

**NOTICE OF IMPORTANT RIGHTS**

Pursuant to the Fair Debt Collection Practices Act ("FDCPA") 115 U.S.C. §1692), a consumer debtor is required to be sent the following notice: (1) unless the consumer, within thirty (30) days after receipt of this notice, disputes the validity of the debt or any portion thereof, the debt will be assumed to be valid by the debt collector; (2) if the consumer notifies the debt collector in writing within the thirty-day period that the debt or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer, and copy of such verification or judgment will be mailed to the consumer by the debt collector; and (3) upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

The Law Office of Mandy L. Spaulding is acting as a debt collector pursuant to the FDCPA and any information obtained will be used for that purpose. We further inform you that despite the fact that you have a thirty (30) day period to dispute the debt may not preclude the filing of legal action against you prior to the expiration of the period.

You have the right to make a written or oral request that telephone calls regarding your debt not be made to you at your place of employment. Any such oral request will be valid for only ten days unless you provide written confirmation of the request postmarked or delivered within seven days of such request. You may terminate this request by writing to the creditor.